(111 So. 162)

No. 27930.

STATE v. CARSON CARBON CO., Inc.

(Nov. 29, 1926.  On Application for Rehearing, Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. Indictment and information ⬿110(2)—Information for taking excessive amount of gas from well held sufficiently clear where based on language of statute (Act No. 252 of 1924, § 4, subd. 2).

Bill of information charging excessive use of gas from gas well in violation of Act No. 252 of 1924, § 4, subd. 2, where bill charged violation using phraseology similar to that of statute, which made it unlawful to take more gas from well for period of seven consecutive days than maximum production allowed to be taken would amount to for same period, *held* sufficiently clear.

2. Indictment and information ⬿63—Information for taking excessive amount of gas from wells held not to state mere conclusions, where showing amount allowed and amount taken (Act No. 252 of 1924, § 4, subd. 2).

Information for taking excessive amount of gas from gas wells in violation of Act No. 252 of 1924, § 4, subd. 2, *held* not to aver mere conclusions, where number of cubic feet of gas alleged to have been taken was stated as well as number of cubic feet allowed under statute.

3. Statutes ⬿107(3)—Act prohibiting taking excess amount of gas from wells held not unconstitutional as having several objects, where quasi civil process provided for applied only to prosecutions under act (Act No. 252 of 1924, § 12; Const. 1921, art. 3, § 16).

Act No. 252 of 1924, providing penalty for taking more than limited amount of gas from gas well for weekly period, *held* not in violation of Const. 1921, art. 3, § 16, as having more than one object, though statute provides method of prosecution by serving certified copy of information as in civil suit, inasmuch as such provision in section 12 of the act did not purport to apply to other criminal prosecutions.

4. Statutes ⬿107(1)—Statute providing means for enforcing principal object is not unconstitutional as having more than one object (Const. 1921, art. 3, § 16).

Statute may provide means for enforcing its principal object without thereby violating constitutional requirement that an act of the Legislature shall have only one object, under Const. 1921, art. 3, § 16.

5. Mines and minerals ⬿95—Provision that prosecution of corporations for using excessive gas might be by serving copy of information held valid and to apply only to violations of act (Act No. 252 of 1924, § 12).

Act No. 252 of 1924, § 12, providing corporation violating provisions of act in taking excess amount of gas from wells could in addition to method existing for bringing corporations into court in criminal prosecutions be made to answer such prosecutions by service of certified copy of indictment or information, *held* to apply only to criminal prosecutions under such act.

6. Mines and minerals ⬿95—Operators of well drilled under act prohibiting excessive use for carbon black could be prosecuted under later act prohibiting excessive taking of gas for any purpose (Act No. 252 of 1924; Act No. 91 of 1922).

Information under Act No. 252 of 1924 for taking excess amount of gas from well *held* sufficient as to well drilled before passage of act and covered by Act No. 91 of 1922, which forbids taking excessive amount for manufacture of carbon black, such law being amended by 1924 act to prevent taking excessive amount for any purpose.

7. Constitutional law ⬿250—Mines and minerals ⬿92—Act conserving gas resources which allowed daily minimum production held not denial of equal protection, where extending to wells drilled before passage (Act La. No. 252 of 1924, § 3; Const. U. S. Amend. 14).

Act La. No. 252 of 1924, § 3, restricting taking of gas from wells, *held* not in violation of equal protection clause of Fourteenth Amendment of federal Constitution in allowing daily minimum production of 1,000,000 cubic feet of gas from wells drilled after passage, where such privilege was not withheld from operators producing wells drilled before passage.

8. Constitutional law ⬿240(1)—Gas conservation statute allowing minimum production from wells subsequently drilled held not discriminatory as to old wells allowed more than minimum (Act No. 252 of 1924).

Act No. 252 of 1924, limiting taking of gas from gas wells to maximum weekly production, which allowed minimum daily production of 1,000,000 cubic feet of gas from each well drilled after passage of act, *held* not discriminatory as to wells drilled before passage which had maxi-

mum production allowed of over 1,000,000 cubic feet per day.

**9. Mines and minerals ⟨key⟩95—Plea in prosecution for taking excess of gas that minimum was allowed held immaterial, where amount taken exceeded minimum (Act No. 252 of 1924, § 3).**

In prosecution for taking excess amount of gas, under Act No. 252 of 1924, plea that 7,000,-000 cubic feet were allowed ·as minimum under section 3 *held* immaterial, where amount taken was far in excess of minimum and exceeded 13,-000,000 cubic feet.

**10. Mines and minerals ⟨key⟩92—Taking more gas from well than 20 per cent. of open flow held an offense under later of two statutes (Act No. 252 of 1924; Act No. 91 of 1922).**

Under Act No. 252 of 1924, taking more gas from well during week stated than 20 per cent. of open flow capacity *held* an offense, though act of 1924 did not specifically state percentage which might be taken, where section 4, subd. 2, made taking more than percentage allowed by Act No. 91 of 1922 a criminal offense.

**11. Mines and minerals ⟨key⟩95—In prosecution for taking excess gas from well, information need not show acreage of land on which well was located (Act No. 252 of 1924; Act No. 91 of 1922).**

In prosecution for taking excess amount of gas from well under Act No. 252 of 1924, information need not state area of tract of land on which well was located, inasmuch as 20 per cent. of open flow capacity allowed by Act No. 91 of 1922, which percentage was adopted as to old well, was flat rate, not dependent on area of land on which well was located.

**12. Constitutional law ⟨key⟩62—Legislature may delegate to commissioner of conservation authority to determine facts governing application of conservation laws (Const. 1921, art. 2, § 2, and article 6, § 1).**

Const. 1921, art. 2, § 2, forbidding each department of government to exercise power properly belonging to either of other two departments, and article 6, § 1, requiring Legislature to enact all laws necessary to conserve natural resources, do not prevent Legislature from delegating to commissioner of conservation authority to ascertain and determine facts according to which conservation laws enacted by Legislature should be applied and enforced.

**13. Constitutional law ⟨key⟩42—In prosecution for excessive taking of gas from well, defendant could not claim unconstitutionality of former act (Act No. 252 of 1924; Act No. 91 of 1922).**

In prosecution under Act No. 252 of 1924 for excessive production of gas during weekly period, defendant could not claim Act No. 91 of 1922 was unconstitutional in allowing commissioner of conservation to determine percentage of natural gas to be used in producing carbon black, inasmuch as prosecution did not involve taking gas for carbon black, and as commissioner had not exercised authority allowed in former act to reduce percentage of open flow capacity of wells below maximum set by Legislature.

**14. Constitutional law ⟨key⟩296(1)—Act restricting taking gas from wells held not denial of due process because uncertain where uncertainty was due to technical subject-matter (Act La. No. 252 of 1924; Const. U. S. Amend. 14).**

Act No. 252 of 1924 *held* not violation of due process clause of Fourteenth Amendment of federal Constitution for vagueness or uncertainty, where difficulty in understanding act was due to technical subject-matter.

Appeal from ·Fourth Judicial District Court, Parish of Morehouse; Percy Sandel, Judge.

The Carson Carbon Company, Inc., was convicted of taking more gas from a gas well for period of seven consecutive days than the maximum production allowed, and it appeals. Affirmed.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and David I. Garrett, Dist. Atty., of Monroe (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

O'NIELL, C. J. The defendant has appealed from a conviction and sentence for the offense of taking more gas from a gas well for a period of seven consecutive days then the maximum production allowed to be taken from the well amounted to for that period, in violation of the second paragraph

of the fourth section of the Act 252 of 1924, p. 657. The bill of information charged that the defendant—

"* * * during the period of seven consecutive days, to wit, from the eighth (8th) day of October, A. D. nineteen hundred and twenty-four (1924) to the fifteenth (15th) day of October, A. D. nineteen hundred and twenty-four (1924), in the parish and state aforesaid, did then and there willfully and unlawfully take more natural gas from a certain gas well, to wit, Erwin No. one (1), than the maximum production allowed to be taken from such well would amount to for the same period, the maximum quota production allowed being 9,852,000 cubic feet, and 13,634,000 cubic feet being actually taken from said well during said period, contrary to the form of the statute," etc.

The record contains several bills of exception and an assignment of errors; the several complaints being urged in a motion to quash the bill of information, and repeated in objections to the introduction of evidence, and in a motion in arrest of judgment and motion for a new trial.

[1] The first complaint was that the bill of information did not clearly or sufficiently charge the commission of an offense, in that it did not state the actual potential capacity of the well, or the quantity of gas actually drawn during the week mentioned in the bill, and that the averment that the defendant did willfully and unlawfully take more natural gas from the well than the maximum production allowed to be taken was only a conclusion of the pleader and not an averment of fact.

The bill of information is plain enough to us. The phraseology is like the second paragraph of the fourth section of the statute, viz:

"It shall be unlawful for any person, firm, corporation, or association of persons to take more gas from any well for a period of seven consecutive days than the maximum production allowed to be taken from such well would amount to for the same period, or to take more gas from any well in any one day than one and one-half times the allowable production of such well," etc.

[2] The averment in that respect was not merely a conclusion of the pleader, for the number of cubic feet of gas alleged to have been actually taken, as well as the number of cubic feet allowed to be taken, during the seven-day period, was stated in the bill of information.

[3] The second complaint is a plea that the Act 252 of 1924 is violative of section 16 of article 3 of the Constitution, in that it has more than one object. The plea refers to the fact that, in addition to the main object of conserving the natural gas of the state, the statute provides (in the twelfth section) a new and quasi civil process for bringing corporations into court to answer to criminal charges.

[4, 5] The process provided for in the twelfth section of the act is not a separate or independent object of the law; it is only one of the means provided for carrying out the main and only object, to conserve the natural gas of the state. It is well settled that a statute may provide the means for enforcing its principal object without thereby violating the constitutional requirement that an act of the Legislature shall have only one object. State v. Doremus, 137 La. 266, 68 So. 605; City of Shreveport v. Nejin, 140 La. 786, 73 So. 996; State v. Lahiff, 144 La. 362, 80 So. 590. There would be some merit perhaps in this plea of unconstitutionality if the process provided for in the twelfth section of the act provided for the bringing of corporations into court in prosecutions for violation of any or all other statutes. But the language leaves no room for interpretation, or room to doubt that the process provided for bringing corporations into court is applicable only to violations of the Act 252 of 1924. The title reads thus:

"An act to conserve the natural gas resources of the state; * * * to make it a misdemeanor to violate any of the provisions of this act, and to provide penalties therefor; and to pro-

vide for bringing corporations into court in criminal prosecution under this act."

The twelfth section of the act is also plain, viz.:

"Any corporation violating the provisions of this act, or any order of the commissioner of conservation promulgated by authority of this act, may be prosecuted by indictment, or information, the same as a natural person, and in addition to and cumulative of any way now existing for bringing a corporation into court in criminal prosecutions, may be brought into court to answer such prosecutions by service of a certified copy of such indictments or information served in the same manner as a civil suit would be served with notice to appear and answer such charge within ten days," etc.

It is true that, in the first opinion rendered in State v. Thrift Oil & Gas Co. (No. 27684) ante, p. 165, 110 So. 188, it was said, with regard to this new process provided for in the twelfth section of the Act 252 of 1924, that any corporation, firm or association of persons might be proceeded against by service of the additional civil process, as provided in section 12 of the Act 252 of 1924, for the violation of any criminal statute of this state. That was a mistake, and was harmless because the ruling at the same time was that the providing of the new and quasi civil process for bringing corporations into court to answer for violations of the statute was not a separate or independent object of the law, but only a means to an end. Besides, the first opinion rendered in the case was set aside by the granting of a rehearing, and on the rehearing the conviction was annulled because the defendant was not accused of taking more than 1,000,000 cubic feet of gas a day.

[6] Appellant's third point is that, inasmuch as the well called Erwin No. 1 was drilled before the act of 1924 went into effect, the percentage of open flow production which it was allowed to produce was, according to the proviso in the third section of the act, regulated by the Act 91 of 1922, and not by the Act of 1924; that the Act of 1922 only limits the production of gas that is used or to be used in the manufacture of carbon black; and that the bill of information in this case, without charging that the alleged excess of production was of gas used or intended to be used in the manufacture of carbon black, does not charge that the law was violated.

The answer to that is that the law which the defendant is accused of violating is expressed in the second paragraph of the fourth section of Act 252 of 1924, which we have quoted. It is true, according to the proviso in the last paragraph of the third section of the act of 1924, the percentage of the open flow capacity which the well called Erwin No. 1 was allowed to produce, the well having been drilled before the Act of 1924 went into effect, was the percentage allowed by the Act 91 of 1922. But, according to the act of 1924, which did not entirely repeal or supersede the act of 1922, but merely augmented the law, the defendant was forbidden to exceed the percentage of open flow capacity allowed by the act of 1922 for the manufacture of carbon black or for any other purpose.

[7] Appellant's fourth contention is that the act of 1924 denies the equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States, in that, under certain specified conditions, in the third section, the statute allows a daily production of 1,000,000 cubic feet of gas from a well drilled after the passage of the act, and denies the privilege as to wells drilled before the passage of the act. The complaint refers to the following paragraph in the third section of the act, viz.:

"Where the percentages hereinabove provided applied to any well reduces the amount allowed below one million cubic feet [meaning 1,000,000 cubic feet per day], there may be taken from such well a total of one million cubic feet [a day], provided the back pressure as elsewhere herein provided for, shall be maintained."

We decided in State v. Thrift Oil & Gas Co. (No. 27684) 110 So. 188,[1] and repeated in State v. Consumers' Gas Co. (No. 27819) ante, p. 200, 110 So. 200, that the privilege referred to is not withheld from operators producing from wells drilled before the passage of the act of 1924, or commenced before the 24th of June, 1924. There is therefore no discrimination in that respect.

[8] Aside from our ruling that there is no discrimination in the clause quoted, the defendant in this case has no cause for complaint, with regard to the well called Erwin No. 1, because, being governed by the percentage of open flow capacity allowed by the act of 1922, and as fixed by the commissioner of conservation, the well was allowed to produce 20 per cent. of its open flow capacity, which, according to the bill of information, was more than 1,000,000 cubic feet per day. The bill recites that the maximum production allowed was 9,852,000 cubic feet for the week, which was an average of 1,407,428 cubic feet per day.

[9] Appellant's fifth point is made only as an alternative plea; that is, that if the million feet minimum allowance is applicable to wells drilled previous to the passage of the act of 1924, appellant's allowance was 7,000,000 cubic feet for the term stated in the bill of information. The premise is correct, but it leads to nothing, because the charge in the bill of information is that defendant actually took 13,634,000 cubic feet of gas from the well, nearly twice 7,000,000 feet, and was allowed to take 9,852,000 cubic feet, nearly 3,000,000 more than 7,000,000, during the week stated.

[10] Appellant's sixth point is that the bill of information charges merely that defendant took more gas during the week stated than 20 per cent. of the open flow capacity of the well called Erwin No. 1, whereas the Act 252 of 1924 does not make it an

offense to take more than 20 per cent. of the open flow capacity of a well. The answer to that is that the charge in this case is that the defendant violated the second paragraph of the fourth section of the act of 1924 by taking more gas from the well than the percentage of open flow capacity allowed by the Act 91 of 1922. The bill of information therefore does charge the commission of an offense.

[11] The seventh complaint is that the bill of information does not state the area of the tract of land on which the well called Erwin No. 1 is located; and in that connection it is contended that the percentage of open flow capacity allowed to be taken from the well is fixed or determined by the statute according to the area of the tract of land on which the well is located. The answer to the argument is that the percentage of open flow capacity allowed by the Act of 1922—20 per cent.—is a flat rate, not dependent or based upon the area of the tract of land on which the well is located.

In its eighth complaint, appellant challenges the jurisdiction of the district court and the court's authority to bring a corporation into court by the quasi civil process provided in the twelfth section of the act of 1924. It is said—and rightfully said—that this new process provides only for bringing corporations into court to answer for a violation of the act of 1924. The answer to the argument is that the defendant in this case is accused of a violation of the act of 1924 by the taking of more gas from its well than the percentage of open flow capacity that was allowed by the act of 1922.

[12, 13] The ninth complaint is a plea that the Act 91 of 1922 is unconstitutional, in that, in so far as it undertakes to authorize, direct, and empower the commissioner of conservation to fix and determine "what percentage of consumption of natural gas produced by each gas well may be used in the

---

[1] Ante, p. 165.

manufacture of carbon black," the statute is violative of the second section of article 2 of the Constitution, forbidding any one of the three departments of the state government, or any person holding office in any one department, to exercise any power properly belonging to either of the other two departments, and is violative also of the first section of article 6 of the Constitution, requiring that the Legislature shall enact all laws necessary to protect, conserve, and replenish the natural resources of the state and to prohibit and prevent the waste or any wasteful use thereof. That does not mean that the Legislature may not delegate to the commissioner of conservation the authority to ascertain and determine the facts according to which the conservation laws enacted by the Legislature are to be applied and enforced. State v. Guidry, 142 La. 422, 76 So. 843. The defendant in this case, however, has no interest in questioning, and therefore no right to question, the constitutionality of the Act 91 of 1922, in so far as it undertakes to authorize the commissioner of conservation to fix and determine what percentage of natural gas produced by each well may be used in the manufacture of carbon black; and we have no occasion for deciding the question in this case. In authorizing the commissioner of conservation to fix the percentage, in the second section of the Act 91 of 1922, the Legislature itself limited the percentage by declaring that it should be not less than 15 nor more than 20 per cent. of the potential capacity of any well. Therefore, as far as the maximum allowance of 20 per cent. goes, the Legislature itself fixed it; and it appears that the commissioner of conservation did not avail himself of his authority—not as to the well called Erwin No. 1, and not as to any other well as far as we know—to fix the allowance below 20 per cent., and as low as 15 per cent. This 20 per cent. allowance is the limit in force yet as to wells drilled before the enactment of the statute of 1924, or commenced before the 24th of June, 1924, in this respect: That the act of 1924 makes it a misdemeanor to take from such a well more gas in seven consecutive days, or more than one-half more in a day, than the 20 per cent. allowed by the second section of the Act 91 of 1922.

[14] The tenth and last complaint made by the appellant is repeated in an assignment of errors filed in this court; that is, that the phraseology of the Act 252 of 1924 is vague and indefinite and uncertain in its meaning, so much so, it is charged, that it violates the due process clause in the Fourteenth Amendment of the Constitution of the United States. The statute is not worded as artistically as it might have been worded, but that is due in some measure perhaps to the fact that the author had to give attention more to his technical knowledge of the subject in hand than to the orthography. We had great difficulty in understanding some sections of the act until we had read them over several times, but that was largely for want of technical knowledge of the operation of gas wells. Conceding that it requires a careful reading and study of the act to find its meaning in some respects, we do not consider it amenable to the charge that it does not afford due process of law.

The conviction and sentence are affirmed.

LAND and BRUNOT, JJ., concur in decree.
THOMPSON, J., takes no part.

On Application for Rehearing.

ST. PAUL, J. I concur in the refusal to grant a rehearing herein because the defendant is charged with taking (and did take) from its well, Erwin No. 1, 13,634,000 cubic feet of gas in seven days, which is 1,811,907 cubic feet more than 24 per cent. of its open flow capacity (say 7,036,960 cubic feet per day, or 49,258,720 cubic feet for

seven days), and therefore in excess of the maximum allowed for any well whatever, for any purpose whatsoever, either by Act 91 of 1922 or by Act 252 of 1924.

But, in my opinion, the later act (No. 252 of 1924) governs the production for *all* wells, whether drilled before or since the passage thereof, with this proviso only, that wells drilled before the passage thereof may nonetheless still take gas in excess of the amount allowed by that act, if the amount so taken be not *also* in excess of the amount allowed by Act 91 of 1922.