No. 28,767.

THE STATE OF KANSAS, *Appellant,* v. SAM LEBOW, *Appellee.*

No. 29,000.

THE STATE OF KANSAS, *Appellant,* v. TATE McCULLOUGH and ROBERT McCULLOUGH, *Appellees.*

(280 Pac. 773.)

Opinion filed October 5, 1929.

*William A. Smith,* attorney-general, and *O. R. Stites,* county attorney, for the appellant.

*Gilbert H. Frith, Clarence V. Beck,* both of Emporia, and *Robert H. Clogston,* of Eureka, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: These are appeals by the state in two cases upon questions reserved for assigned errors of the trial court in sustaining

a motion, in each case, to quash and set aside the information. The information in each case charged the defendants with a violation of R. S. 55-121, differing only in the description of the land on which the violation occurred, alleging in each case that the defendant, having the control of certain oil and gas wells, unlawfully permitted salt water, oil and refuse from such wells to escape upon the ground and flow away from the immediate vicinity of such wells; that the defendant did fail to keep salt water, oil and refuse from such wells safely confined in tanks, pipe lines or ponds; that such salt water, oil and refuse escaped and flowed away from the immediate vicinity of such wells because of circumstances within the control of the defendant and not because of circumstances beyond his control.

It will be at once observed that the information does not mention or describe any injury or harm as being done to any person or to the community at large, or any danger that has arisen or is likely to arise by reason of the acts and omissions complained of. Does the crime intended to be charged consist of the waste or destruction of private property to an extent that would be a deprivation to the public? Or does it so pollute the soil as to destroy its value to the detriment of the neighbors? Or does it pollute the air with noxious and offensive odors to the discomfort of the inhabitants of the vicinity? Or does it in any other way affect the health, comfort, safety or convenience of the public, or destroy vegetation, or in any other way disturb or interfere with the interests of others? The answer to these questions is that the pleader has followed the statute. R. S. 55-121 is as follows:

"It shall be unlawful for any person, having possession or control of any well drilled, or being drilled, for oil or gas, either as contractor, owner, lessee, agent or manager, or in any other capacity, to permit salt water, oil or refuse from any such well, to escape upon the ground and flow away from the immediate vicinity of such well, and it shall be the duty of any such person to keep such salt water, oil or refuse safely confined in tanks, pipe lines or ponds, so as to prevent the escape thereof: *Provided, however,* That this act shall not be construed to apply to the escape of salt water, oil or refuse because of circumstances beyond the control of the person in the possession or control of such well and under circumstances which could not have been reasonably anticipated and guarded against."

The offense seems to consist of permitting salt water, oil and refuse to escape and flow away from the immediate vicinity of the well and the failure to confine it in tanks, pipe lines or ponds so as to prevent its escape. If so, we can dismiss the natural queries above propounded and all others like them except to think of them

as within the probable legislative intent and purpose of the enactment.

Three grounds were presented by the appellees for quashing the informations and are now urged in supporting the ruling of the trial court. They are: first, that the act is unconstitutional because in violation of section 16 of article 2 of the constitution; second, that the act is in violation of the fourteenth amendment to the constitution of the United States in that it deprives the defendants of their property without due process of law; and, third, that the act is in violation of section 10 of the bill of rights to the Kansas constitution, in that the defendants were not apprised of the nature and cause of the accusation against them.

The statute in question was enacted in 1921, being chapter 198 of the session laws of that year. The showing made by the appellees that the subject of the act was not clearly expressed in its title was very forceful and convincing, but it all became of no avail when the fact was observed that this statute was reënacted in the 1923 revision of the statutes and any such defect in the original title was entirely cured by the new title in the revision. (*State, ex rel., v. Davis, Governor,* 116 Kan. 663, 229 Pac. 757, and *City of Wichita v. Wichita Gas Co.,* 126 Kan. 764-768.)

In supporting the second proposition the appellees claim that the law deprives them of the use of their own property without due process of law and insist that the legislature does not have power to prevent them from wasting their own property, if by so doing they in no way injure others; and they call specific attention to the fact that they are not charged with polluting the water but only charged with permitting salt water, oil and refuse to flow away from the immediate vicinity of the wells. They recognize the police power of the legislature and the full right to enact laws for public safety, public health and other similar purposes, but maintain that no such protection is afforded anyone by this act. Indiana has a statute making it an offense to waste natural gas by burning it in flambeau lights, and the supreme court of that state upheld the law as valid when it harmed no one in particular and the gas belonged to the one who was wasting it.

"Section 2316, Burns' R. S. 1894, declaring that burning natural gas in flambeau lights is a wasteful use thereof, and forbidding such use under penalty of fine, is not in violation of the fifth and fourteenth amendments to the federal constitution, providing that no person shall be deprived of his property without due process of law." (*Townsend v. The State,* 147 Ind. 624, syl.)

Indiana has another act to prevent the flow of gas without control for more than two days after it has been struck, and it was held in a criminal case under this statute:

"If the natural gas escaping from wells is dangerous to persons and property in the vicinity, the legislature, in the exercise of its police power, has the right to regulate the sinking and casing of wells.

"A legislative act for the protection of the public is not invalidated because it results in the deprivation of property." (*Given v. State,* 160 Ind. 552, syl. ¶¶ 4, 5.)

This last statute was interpreted by the supreme court of the United States in a civil action and it was there held that the act "is not a violation of the constitution of the United States; and its enforcement as to persons whose obedience to its commands were coerced by injunction is not a taking of private property without adequate compensation, and does not amount to a denial of due process of law, contrary to the provisions of the fourteenth amendment to the constitution of the United States, but is only a regulation by the state of Indiana of a subject which especially comes within its lawful authority." (*Ohio Oil Company v. Indiana* [No. 1], 177 U. S. 190.)

Oklahoma enacted a law on this subject very much like ours in 1921 with civil and criminal provisions, and in a civil action it was upheld in the following language:

"Said statutes come clearly within the police power of the state. Protection of the purity of the streams and lakes for the preservation of the life, health, and happiness of the people, as well as animal life, is the public policy of the state." (*Verland Oil & Gas Co. v. Walker,* 100 Okla. 258, 259.)

Similar decisions are found in many states, although Wisconsin, Montana and perhaps others have adhered to the right of the owner to do with his own much as he pleases unless there is a showing of direct injury or detriment to others. Some of the statutes on this subject mention the pollution of the streams and the injury or damage to lower or adjoining land. We have in Kansas a number of specific requirements imposed by statute with reference to casing and plugging oil and gas wells in which the specific purpose is not expressed but is left to be inferred, and if applied to the extreme instance proposed by the appellees of a single well in the midst of a large cattle ranch the purpose of the law might not be apparent.

R. S. 55-110 is as follows:

"It shall be unlawful for any person, firm, company or corporation in this state to drill or operate gas or oil wells within one hundred feet of the center of the right of way of any steam or electric line of railway."

The next section imposes a penalty. There is nothing expressed in this act to indicate why the landowner should be deprived of the privilege of drilling the well where he pleases on his own land, but anyone can readily conclude that it is for the public safety, as was held in *Winkler Oil Co. v. Anderson,* 104 Kan. 1, 177 Pac. 521:

"The statute making it unlawful to drill or operate oil or gas wells within 100 feet of the right of way of any steam or electric line of railway does not contravene the provisions of the constitution of the state of Kansas, or the provisions of the constitution of the United States, and is the product of a proper exercise of the police power of the state." (Syl.)

In the opinion it was said:

"The police power extends not only to the protection of the public safety, health and morals, but also to the promotion of the common convenience, prosperity, and welfare. While oil and gas wells are not nuisances *per se,* and the business of drilling and operating them is ordinarily legitimate and harmless, it is conceivable that they may become detrimental in a high degree." (p. 2.)

A few years ago when trading stamps were in use Kansas enacted a statute restricting the use of them and imposing a license tax with a penal clause for the violation thereof, and the following is the ruling of this court thereon:

"In the case of a business which the state under its police power has a right to prohibit on the ground that it is injurious to the public, the legislature may exact as a requirement to its continuance the payment of a license tax so large as to be practically prohibitory." (*State v. Wilson,* 101 Kan. 789, syl. ¶ 3, 168 Pac. 679.)

Some generally accepted definitions, rules and tests may be helpful.

"In order that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals, or general welfare, that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof." (12 C. J. 929.)

"Admitting that the subject to which the statute relates is within the scope of legislative power, the test of validity within the police power is whether or not the regulations prescribed are reasonable; and the test of reasonableness is whether the attempted regulation makes efficient constitutional guaranties and conserves rights, or is destructive of inherent rights." (12 C. J. 934.)

"Everyone who brings oil or stores it on land must confine it securely in pipes, tanks or reservoirs, or at least not permit it to escape on to the land of another, whether by flowing over the surface or percolating through the soil, and if he does not, even though guilty of no negligence, he will be liable

for whatever damage is suffered by the oil escaping." (Thornton's Law of Oil and Gas, 3d ed., p. 923.)

"Statutes imposing penalties for permitting the escape of oil or gas have been held to be valid, whether the main object of the statute was the public safety or the prevention of waste; and the fact that compliance with such a statute might result in deprivation of property was held not to invalidate the statute. Such a statute has been held to be penal in its nature." (40 C. J. 1137.)

We think this law meets the standard test of reasonableness; that there is a clear, real and substantial connection between the evident purpose of the law and the attempt to prevent the escape of salt water, oil and refuse, and that the law is valid and not in contravention of the fourteenth amendment of the United States constitution. It is patent to everyone that the legislative intent in the enactment of our statute on this subject was to protect the purity of streams, wells and lakes from pollution by such salt water, oil and refuse for the preservation of the life and health of the people as well as animal life, by preventing these products of oil and gas wells from flowing over the land or percolating through it.

The third ground urged to make the law invalid is that it is in violation of section 10 of the bill of rights in that it does not apprise the defendants of the nature and cause of the accusation against them. This contention is based mainly upon the apparent indefinite limits beyond which the escape of these articles constitutes a crime. It is claimed the words "immediate vicinity" are too indefinite to apprise them of any reasonable limits, and what would be reasonable limits in one instance might be unreasonable in another. Where the evil sought to be prevented is apparent, a reasonable construction of the language employed is justified and uncertainty can frequently be removed by resort to the context instead of attempting to construe words by themselves.

"In determining the meaning of a statute, consideration should first be given to the language employed therein but, especially in applying a criminal statute, the courts should have regard to the evil sought to be remedied, for that which is not within the spirit of the statute, although within the letter thereof, is not in legal contemplation a part of it." (State v. Hanchette, 88 Kan. 864, syl. ¶ 2, 129 Pac. 1184.)

"In a statute authorizing the revocation of a dentist's license for specific offenses, the additional phrase 'or for any other dishonorable conduct' is not void for indefiniteness." (Richardson v. Simpson, 88 Kan. 684, syl. ¶ 3, 129 Pac. 1128.)

"If the act is capable of reasonable construction, . . . . it will not be declared void for uncertainty." (36 Cyc. 969.)

"Legislation should not be held invalid on the ground of uncertainty if susceptible of any reasonable construction that will support and give it effect." (25 R. C. L. 810. See, also, *Young v. Regents of State University*, 87 Kan. 239, 124 Pac. 150.)

But the legislature in the enactment of the statute under consideration supplied an interpretation of the alleged indefinite terms by following it with another clause which is in itself an interpretation of the former clause or a restatement of the offense prohibited, given in language of a duty imposed. The first clause is: "It shall be unlawful for any person . . . to permit salt water, oil or refuse from any such well to escape upon the ground and flow away from the immediate vicinity of such well." The second clause, separated only by a comma, is as follows: "and it shall be the duty of any such person to keep such salt water, oil or refuse safely confined in tanks, pipe lines or ponds, so as to prevent the escape thereof." The last clause imposes a duty, the failure to perform which will be unlawful, and it has no field of usefulness for the term "immediate vicinity," used in the first clause. The evident purpose of the legislature was to prevent the escape of these three articles in the interest of safety and public welfare, and parties accused need not have been in doubt as to the nature and cause of the accusation if they had observed the second clause which made it their positive duty to keep such articles safely confined in tanks, pipe lines or ponds to prevent the escape thereof. If this has not been done, the law has been violated and there is nothing indefinite about the nature of the violation.

We think neither of the constitutional points urged by the appellees are well taken and that the motion to quash the information should not have been sustained.

The judgment is reversed, and the cause is remanded with directions to overrule the motions to quash the informations.