[Crim. No. 3262.  Second Appellate District, Division One.—September 12, 1939.]

In the Matter of the Application of J. W. WOOD and LESTER CALLAHAN for a Writ of Habeas Corpus.

Jonah Jones, Jr., for Petitioners.

Earl Warren, Attorney-General, Everett W. Mattoon, R. S. McLaughlin and John L. Nourse, Deputies Attorney-General, for Respondent.

WHITE, J.—This matter involves an attack by writ of *habeas corpus* upon a judgment for contempt growing out of a violation of an order modifying a preliminary injunction issued by the Superior Court of Los Angeles County in an action brought in the name of the People of the State of California on the relation of George D. Nordenholt, Director of Natural Resources of the State of California, against petitioners herein and numerous others as defendants.

The purpose of the aforesaid action is to restrain the alleged unreasonable waste of natural gas from the wells of

the defendants therein named. In response to an order to show cause such defendants appeared, and after a hearing the superior court on June 16, 1939, issued its preliminary injunction and continued the matter until June 22d, at which time any party to the action was privileged to show cause why the preliminary injunction of June 16th should be modified, vacated or discharged, or a new and further preliminary injunction be made. On June 22d the matter was continued to June 27, 1939, on which last-named date the court made the following findings:

"1. That good cause appears for the modification of the preliminary injunction dated June 16, 1939, as hereinafter set forth, and good cause appears for the inclusion of the defendants La Merced Drilling Co., Hathaway Company, Stanley Oil Company, Vulcan Oil Company, R. R. Bush Oil Company.

"2. That there is an unreasonable waste of natural gas in and from the Montebello Oil Field in the county of Los Angeles, California.

"3. That the Texas Company have the only absorption plant in that field and that more gas is being processed by the Texas Company than there is use for in the field or for any commercial market, and that therefore a vast amount of dry gas is needlessly wasted by being blown to the air at the obsorption plant.

"4. That this blowing of gas to the air is an unreasonable waste of the natural resources of the State of California, and is an act specifically prohibited by the California laws for the conservation of petroleum and gas.

"5. That the total of gas outlets for all uses, with a reasonable tolerance to take care of normal fluctuating demands, shrinkage, present field gas outlet and reasonable waste, is not more than 23,000,000 cubic feet of gas each day.

"6. That the production of gas from each well should not be limited to less than 100,000 cubic feet of gas each day.

"7. That each well producing in excess of 4,500,000 cubic feet of gas per day is unreasonably wasting gas, and the potential power of said gas to lift oil, to the detriment of the natural resources of the State of California and to the detriment of all operators having wells in said Montebello field.

"8. That said 23,000,000 cubic feet of gas should be distributed between and among the wells in said Montebello field as hereinafter set forth.

"9. That the evidence shows that the unreasonable waste of natural gas in said field will be substantially reduced and that the equities of all parties may be fairly conserved by a preliminary injunction which will limit the waste of gas as hereinafter ordered, and that sufficient cause has been shown for the extraordinary relief of a preliminary injunction pending the trial of the action on the merits and the entry of a final judgment herein."

Based on the foregoing findings, and for the purpose, as stated by the court, "to conserve the natural gas in said field", the preliminary injunction was, under date of June 28th, modified to restrain the defendants from producing more natural gas in the Montebello field than the amount allotted by the court to the respective defendants. By the terms of the order modifying the temporary injunction these petitioners as defendants in said action were restrained from producing from their well, known as "Harris Well No. 1", more than 990,000 cubic feet of gas per day. Subsequently, upon affidavits filed with the superior court, that tribunal issued its order directing these petitioners to appear and show cause why they should not be adjudged in contempt of said court for asserted violation of the order of June 28th modifying the temporary injunction. Pursuant to such last-named order to show cause *in re* contempt these petitioners appeared before said superior court on July 21st, and after a hearing based on affidavits the court found that petitioners upon twelve separate days had produced from their "Harris Well No. 1" gas in excess of the 990,000 cubic feet allotted them by the order of June 28th. As punishment for such violation, petitioners were fined respectively in the sum of $25 on each of the twelve counts of contempt, and in default of payment of such fines were ordered committed to the custody of the sheriff of Los Angeles County, from which imprisonment they seek release by this writ of *habeas corpus.*

The authority for the action in which the order modifying the temporary injunction was made is found in section 14b of the Oil and Gas Conservation Act (Stats. 1915, p. 1404 and amendments; Deering's Gen. Laws, 1937, Act 4916). In the amended title to the act its purpose is stated in part as "an act to protect the natural resources of . . . gas from damage, waste and destruction". Section 8b of the amended act reads:

"The unreasonable waste of natural gas by the act, omission, sufferance or insistence of the lessor, lessee or operator of any land containing oil or gas, or both, whether before or after the removal of gasoline from such natural gas, is hereby declared to be opposed to the public interest and is hereby prohibited and declared to be unlawful. The blowing, release or escape of natural gas into the air shall be *prima facie* evidence of unreasonable waste."

The claims of petitioners in this *habeas corpus* proceeding may be summarized as follows: "That under the Oil and Gas Conservation Act the superior court is authorized to restrain only the unreasonable waste of gas; that all production of gas put to a beneficial use is not waste within the meaning of said act, and that the order of the court allotting and limiting the production of gas beneficially used was in excess of its jurisdiction. Petitioners concede that if the court possessed the power to limit the production of gas beyond such gas as is blown into the air or otherwise wasted, then the writ of *habeas corpus* must be denied.

It is established by the record before us that after the issuance of the order modifying the temporary injunction of June 28th, petitioners herein did not blow any gas from their said well into the air; but such gas as was produced over and above that necessary for oil production from petitioners' well was used for industrial power in supplying energy to adjoining oil wells; that petitioners were supplying gas for twenty boilers in the Montebello oil field. Petitioners further showed without contradiction that they were under contract to furnish gas to complete certain wells, and contend that if forced to abide by the court's order they would be compelled to buy gas from some other source in order to comply with their contracts to furnish that commodity to other drilling wells.

The only question, therefore, in the proceeding before us, involving as it does a judgment pronounced in a contempt proceeding, is whether the superior court had jurisdiction to make the order modifying the temporary injunction and limiting gas production when such gas was not blown into the air; because it is conceded that petitioners violated such order of allotment. (*In re Selowsky,* 189 Cal. 331 [208 Pac. 99]; *In re Drew,* 188 Cal. 717 [207 Pac. 249]; *Ex parte Ah Men,* 77 Cal. 198 [19 Pac. 380, 11 Am. St. Rep. 263]; *Ex parte Levin,* 191 Cal. 207 [215 Pac. 908]; sec. 1209,

subd. 5, Code Civ. Proc.) ██ Jurisdiction has been defined as being the power to hear and determine the matter in controversy,. and if the power existed the question of whether the court erred or the power was improperly exercised is not involved and errors of the court therein constitute no defense whatever. ██ An injunction may be disregarded only when the same is void because of want of jurisdiction in the judge who issued it. (*People* v. *McWeeney*, 259 Ill. 161 [102 N. E. 233, Ann. Cas. 1916B, 34].) ██ We are, therefore, not concerned with the correctness of the decision made, but only with the question of the .court's jurisdiction. If the order here in question was made in the exercise of jurisdiction then it must be obeyed until such order is modified or set aside by the court making it, or reversed in a direct proceeding by appeal therefrom.

In *People* v. *Associated Oil Co.*, 211 Cal. 93 [294 Pac. 717], we find a painstaking, comprehensive and detailed narrative of the development of the petroleum industry, as well as a careful analysis of both legislation and judicial decisions in connection with the rights of those engaged in oil and gas production; the correlative rights of adjoining landowners in a proven oil field, as well as the interest and concern of the state in the conservation of these resources. In the cited case our Supreme Court, speaking through Mr. Justice Shenk, says:

"The generally accepted view, therefore, is that the property right of the owner or lessee of land in and to the gas and oil beneath the surface is not an absolute one. Such substances, because of their peculiarity in the natural state, partake more of the nature of common property, title to which becomes absolute when they are captured and reduced to possession. Because of their peculiar nature the public has a definite interest in their preservation from waste and destruction. This is true because of their character as natural resources and also because the public interest has attached by virtue of positive statutory law or by court judgment independent of statute. In seven states of the union legislation making unlawful the unreasonable waste of natural gas has been upheld: Indiana: *State* v. *Ohio Oil & Gas Co.*, 150 Ind. 21 [47 L. R. A. 627, 49 N. E. 809] ; *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190 [44 L. Ed. 729, 20 Sup. Ct. 576]. Kentucky: *Commonwealth* v. *Trent,* 117 Ky. 34 [4 Ann. Cas. 209, 77

S. W. 390]. Wyoming: *Walls* v. *Midland Carbon Co.*, 254 U. S. 300 [65 L. Ed. 276, 41 Sup. Ct. 118]. Oklahoma: *Quinton Relief O. & G. Co.* v. *Corporation Com.*, 101 Okl. 164 [224 Pac. 156]. Louisiana: *State* v. *Carson Carbon Co.*, 162 La. 781 [111 So. 162]. Texas: *Oxford Oil Co.* v. *Atlantic Oil P. Co.*, 22 Fed. (2d) 597 (*certiorari* denied United States Supreme Court, 277 U. S. 585 [72 L. Ed. 1000, 48 Sup. Ct. 433]) ; *Railroad Com. of Texas* v. *Bass*, (Tex. Civ. App.) 10 S. W. (2d) 586; *Magnolia Petroleum Co.* v. *Stroud*, (Tex. Civ. App.) 3 S. W. (2d) 462. Kansas: *State* v. *Lebow*, 128 Kan. 715 [280 Pac. 773, 775] ; *Marrs* v. *City of Oxford*, 32 Fed. (2d) 134 [67 A. L. R. 1336]. Rehearing denied, Circuit Court of Appeals, May. 17, 1929. *Certiorari* denied, United States Supreme Court, October 21, 1929, 280 U. S. 573 [50 Sup. Ct. 29, 74 L. Ed. 625].''

In the same case (*People* v. *Associated Oil Co.*, *supra*) we find the positive statement that independent of statute the waste of gas resulting merely in a depletion of the supply in a common reservoir has been enjoined, citing cases. Also in the same case the Supreme Court reiterates the doctrine declared by the United States Supreme Court in *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190 [44 L. Ed. 729, 20 Sup. Ct. 576], to the effect that in the disposition that one may make of gas and oil he is subject to two limitations, *viz.*, his obligations to the public and his neighbor's right; and that if he uses his product in such a manner as to violate any rule of public policy or any positive provisions of the written law, he thereby brings himself within the reach of the courts, and that his absolute power as an owner is subject to the restriction that he must make such use of his production as not to be injurious to the property or health of others.

In *People* v. *Associated Oil Co.*, *supra*, the Supreme Court on page 106 discusses the importance of gas in the oil-producing industry and the great concern of both the industry itself and the government that its function may be fully utilized without wasting, which discussion is followed by the direct and positive language: ''Gas, therefore, which has been allowed to come to the surface without its lifting power having been utilized to produce the greatest quantity of oil in proportion, may be said to amount to an unreasonable waste of natural gas.'' The last-quoted language becomes important in the present case because of the fact that the record

indicates that much, if not all, of the gas in addition to that allotted to petitioners by the superior court order was brought to the surface without its lifting power having been utilized to bring about the production of oil from the ground. The definition of the term "unreasonable waste", as used in section 8b of the act, is epitomized in *People* v. *Associated Oil Co., supra,* by the following language:

"It would seem, therefore, that the legislature has plainly adopted the standard so expressed, *viz.*: that gas may not be produced, under existing conditions where the production thereof so greatly exceeds the market demand therefor, in quantities exceeding a reasonable proportion to the amount of oil produced, as the standard to be applied and beyond which the production is prohibited as being an unreasonable waste of natural gas."

In the same case the Supreme Court views the terms of the Oil and Gas Conservation Act as establishing the fact that "the primary function of gas in the production of oil is recognized, and its complete utilization in that respect, without unnecessary waste, is attempted to be safeguarded". This is followed with the declaration that "the act, without doubt, was a response to a growing recognition that the continuing and increasing waste of the propulsive energy of gas under ground and of its full energy above ground, was unreasonable and should be inquired into and regulated, to the end that the public convenience and general prosperity of the commonwealth be promoted. Such legislation should not be stricken down because there must be an incidental and unavoidable interference in the economic field".

Petitioners' complaint, that adherence to the order of the superior court would result in lessened production of oil with resultant damage, is answered by the Supreme Court in *People* v. *Associated Oil Co., supra,* in the following language: "The result complained of—the lessening of the daily production of oil—if it follow from the operation of the statute, is a matter of concern for the legislature and cannot of itself make void a police measure which is otherwise a constitutional exercise of a legislative power."

The foregoing principles of law find support and approval in *Ambassador Petroleum Co.* v. *Superior Court,* 208 Cal. 667 [284 Pac. 445], *People* v. *Associated Oil Co.,* 212 Cal. 76 [297

Pac. 536], and *Bandini Petroleum Co.* v. *Superior Court,* 110 Cal. App. 123 [293 Pac. 899].

We therefore conclude that the court had jurisdiction to make the findings contained in its order modifying the terms of the temporary injunction under date of June 28th, and based thereon, was clothed with jurisdiction to limit the production of gas from petitioners' well to a definite amount per day. ██ The correctness of the daily allotment cannot be reviewed by *habeas corpus* when, as here, the court was vested with jurisdiction and power to hear and determine the matter in controversy.

For the foregoing reasons, the writ is discharged and the petitioners are and each of them is remanded to the custody of the sheriff of the county of Los Angeles.

York, P. J., and Doran, J., concurred.