**STATE CORPORATION COMMISSION OF KANSAS et al. v. WALL et al.**

No. 2069.

Circuit Court of Appeals, Tenth Circuit.

June 29, 1940.

Harold Medill and John F. Jones, both of Topeka, Kan., for appellants.

W. C. Franklin, of Tulsa, Okl., and Morris H. Cundiff, of Wichita, Kan., for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and MURRAH, District Judge.

PHILLIPS, Circuit Judge.

A proceeding under § 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, was pending in the District Court of the United States for the District of Kansas, No. 4634 in Bankruptcy.

On June 7, 1939, Jesse D. Wall filed a petition in the proceeding, averring therein that on July 22, 1938, he was appointed receiver of the property and estate of the debtors in the bankruptcy proceeding; that the principal asset of the debtors' estate is an oil and gas lease on eighty acres of land in Rice County, Kansas, known as the Campbell Lease; that at the time he took possession of the lease, there was one producing oil well located on the west forty acres thereof which had a potential production of 252 barrels of oil per day; that after his appointment, the well was deepened and the potential production thereof was increased to 906 barrels of oil per day; that there was neither a market demand nor marketing facilities for such oil; that income from the sale of oil amounted to $750 per month; that the debtors' liabilities aggregated $75,000; that in October, 1938, the debtors and the receiver procured the nomination of Cushing Refining & Gasoline Company of Cushing, Oklahoma,[1] to take 2,000 barrels of oil per day from such well and from offset wells in the area known as the Campbell Pool.

That after a hearing, the State Corporation Commission of Kansas,[2] in December, 1938, found that no waste would be committed by the production and sale of oil from such wells under the nomination of Cushing and entered its order accordingly.

That Cushing has operated for more than seventeen years, at Cushing, Oklahoma, a refinery with a capacity of 4,000 barrels of oil per day; that Cushing was not, prior to such nomination, and is not now purchasing any other oil produced in the state of Kansas.

---

[1] Hereinafter referred to as Cushing.

[2] Hereinafter referred to as the Commission.

That prior to January, 1939, the Campbell well was connected with the pipe line of the Skelly Oil Company,[3] and Skelly was taking all oil which the receiver was then allowed to produce; that in order for the receiver to procure pipe-line delivery to Cushing, it was necessary to sever the connection with the Skelly pipe line and to lay a pipe line for a distance of approximately one mile to the Kaw pipe line; that under such nomination and allowable, the receiver sold to Cushing, from the well on the west forty acres, 10,241 barrels of oil in January, 9,572 barrels in February, 7,920 barrels in March, and 8,042 barrels in April, 1939, receiving therefor $28,665.70; that the production during such months was less than fifty per cent of the potential capacity of the well and that such production and sales were made without waste.

That after the nomination of Cushing, and the order of the Commission, and as a result thereof, on February 15, 1939, an arrangement for extension of time to the debtors in which to pay their debts was duly approved in the proceedings; that if the receiver is allowed to produce oil from such well under such nomination and allowable, the creditors of the debtors will be paid in full and the debtors financially rehabilitated.

That after such nomination and allowable, and as a result thereof, the receiver was able to negotiate a contract for the drilling of a well on the east forty acres for the sum of $30,000, to be paid from oil produced and sold from such well; that the well on the east forty acres was completed on March 15, 1939, with a potential production of 356 barrels of oil per day; that thereupon, Cushing included such well in its nomination.

That the Legislature of Kansas, at its 1939 session, enacted a statute relating to the production of crude oil, defining and prohibiting waste thereof, and conferring powers upon the Commission relating thereto. See ch. 227, Kan.Sess.Laws, 1939, p. 456.[4]

That subsequent to the enactment of such law, the receiver was allowed to run 4,254 barrels of oil from the well on the west forty acres during the month of May, 1939; that pursuant to notice, the Commission convened in May, 1939, to fix the allowables on wells in Kansas for the months of June, July, and August, 1939; that at such hearing, the nomination of Cushing was presented; that on June 1, 1939, the Commission reduced the allowable for the Campbell well on the west forty acres from 4,254 to 2,267 barrels per month, and charged it with an alleged overproduction for the month of April, leaving no allowable production for June, and reduced the allowable for the well on the east forty acres from 2,760 to 1,781 barrels per month.

That other wells in the Campbell Pool were owned by companies who were large producers and purchasers of oil or by other oil producers who had pipe-line connections and a ready market; that the order of June 1, 1939, was contrary to provisions of ch. 227, supra, and, if in accordance therewith, was violative of the Constitution of the State of Kansas and the Constitution of the United States; that if said order is permitted to stand, it will be unprofitable for Cushing to continue to take the small amount of oil which the receiver will be permitted to run thereunder and the market for the oil from the wells on such lease will be lost.

That the receiver desires to petition the Commission for a rehearing and should such rehearing be denied, to bring an action in a state court of Kansas, pursuant

---

3 Hereinafter referred to as Skelly.

4 The Act defines waste and empowers and directs the Commission to make rules and regulations governing the production of oil to prevent waste and to prevent the unequal or unfair taking of oil from the common pools under fair and reasonable standards laid down by the Act.

Sec. 5 thereof provides for judicial review of any rule, regulation, order or decision of the Commission in the district court of the county wherein the property affected thereby is located. It provides that before any judicial proceeding shall be taken by a person who was a party to the proceeding resulting in the making of a rule, regulation, order, or decision of the Commission, a petition for rehearing shall first be filed with the Commission. It further provides that any rule, regulation, order, or decision of the Commission may be superseded by the district court upon such terms and conditions as it may deem proper, and that the court may, after a hearing, either affirm or set aside in whole or in part the rule, regulation, order, or decision of the Commission, and that nothing therein contained shall be construed to change, restrict, prohibit, or deny to any person any of the usual equitable remedies.

to the provisions of § 5 of ch. 227, supra, for a review of such order; that such proceeding will consume a substantial period of time and unless the Commission is temporarily enjoined and restrained from enforcing such order as against the wells on such lease, the receiver will lose his market with Cushing and will suffer irreparable loss and damage.

In his petition, the receiver prayed for an order authorizing and directing him to seek a rehearing before the Commission and, if necessary, a review of the order of June 1, 1939, in the proper state court and enjoining the Commission from interfering with the production and sale of 4,038 barrels of oil per month from the well on the west forty acres and 3,174 barrels of oil per month from the well on the east forty acres during the months of June, July, and August, 1939.

On June 7, 1939, the court entered an ex parte order in which it directed the receiver to take the necessary proceedings for a rehearing and review of the order of June 1, 1939, and enjoined the Commission, pending such proceedings and until the further order of the court, from interfering with the production and sale of oil by the receiver in the amount of 4,038 barrels per month from the well on the west forty acres and 3,174 barrels per month from the well on the east forty acres.

The order was served on the Commission and on June 9, 1939, the Commission filed in the proceeding a motion in which it recited that it appeared specially and prayed for a modification of the order of June 7, 1939, in so far as it related to the production and sale of oil from wells located in the Campbell Pool on the grounds that the court lacked jurisdiction of the parties and the subject matter; that the order of the court was legislative in nature and a restraint upon the police power, and that the receiver had an adequate remedy at law.

The motion to modify was presented to the court on June 16, 1939. Thereafter, written briefs were filed. On November 10, 1939, the court entered a judgment in which it ordered that the injunction should be dissolved as of August 15, 1939, and that all oil produced and sold by the receiver from June 7, 1939, to and including August 15, 1939, should not be charged by the Commission as overproduction against the receiver, and that the records of the Commission should be made to show that there was no overproduction by the receiver as of August 15, 1939.

We were advised during the oral argument that after the order of June 7, 1939, the receiver applied for a rehearing before the Commission; that the rehearing was denied and that thereafter, a proceeding was brought in a state court challenging the validity of the order of June 1, 1939. On August 7, 1939, the trial judge instructed the receiver to prepare an order dissolving the restraining order as of August 15, 1939, and abandon the prosecution of the proceeding in the state court.

On November 17, 1939, the Commission filed a motion to vacate that part of the order of November 10, 1939, relating to overproduction. This motion was denied. The Commission has appealed from the order of November 10, 1939.

The Commission challenges the validity of the injunctive provisions of the order of June 7, 1939, on the ground that the court was without jurisdiction of the person or subject matter of the action. We deem it unnecessary to pass on that question. The injunction has been dissolved. The only provisions of the judgment appealed from which adversely affect the Commission are those respecting overproduction.

[1, 2] Counsel for the receiver contend that an order of the Commission charging the receiver with overproduction during the period when the injunctive order was in force would be in the nature of a penalty for the violation of ch. 227, supra, and that the court, under the doctrine laid down in City of Marysville v. Standard Oil Co., 8 Cir., 27 F.2d 478; City of Marysville v. Cities Service Oil Co., 133 Kan. 692, 3 P.2d 1060, 1064, 1068, properly relieved the receiver from such penalty during the time the validity of ch. 227 and the validity of the order of June 1, 1939, were being challenged in the state court. The proceedings to test the validity of the order of June 1, 1939, under direction of the court have been abandoned by the receiver. In this, a collateral proceeding, we must presume that the order was valid. Where an administrative board acts within the line of its official duties, its orders are presumed to have been regularly, properly, and legally made.[5]

---

[5] United States v. Chemical Foundation, 272 U.S. 1, 14, 47 S.Ct. 1, 71 L.Ed. 131; Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 96 F.2d 518, 521;

The property right of the owner or lessee of land in and to the oil and gas beneath the surface is not an absolute one. Those substances, because of their peculiarity in the natural state, partake more of the nature of common property, title to which becomes absolute only when they are captured and reduced to possession.[6] Because they are natural resources, the public has a definite interest in their preservation from waste, and the state has the power to regulate the production of oil and gas for the purpose of preventing waste and protecting the correlative rights of owners producing oil or gas from a common pool.[7]

Deducting as overproduction from future allowables, the amount of the oil produced by the receiver in excess of the order of June 1, 1939, during the time the injunction was in force would not inflict a penalty upon the receiver or his trust. It would only right, to some degree, the wrong done to the other owners producing oil from the common pool whose allowable production was restricted during that period by the Commission's order, resulting in the receiver obtaining more than his share of the oil from the common pool.

We conclude that the court erred in ordering the Commission not to charge against future allowables, the oil produced by the receiver from June 7, 1939, to August 15, 1939, in excess of the order of June 1, 1939, and in ordering the Commission to show by its records that there was no overproduction as of August 15, 1939, and in adjudging the costs against the Commission.

The order is reversed and the cause remanded with instructions to modify the order in accordance with this opinion. The costs will be assessed against the receiver.

---

Cooper v. O'Conner, 69 App.D.C. 100, 99 F.2d 135, 139, 118 A.L.R. 1440; In re Stobie's Estate, 30 Cal.App.2d 525, 86 P.2d 883, 886; United States v. Johnson, 10 Cir., 87 F.2d 155, 159.

[6] Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 233, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Ohio Oil Co. v. Indiana (No. 1), 177 U.S. 190, 203-209, 20 S.Ct. 576, 44 L.Ed. 729; Ex parte Wood, 34 Cal.App.2d 546, 93 P.2d 1058, 1061; People v. Associated Oil Co., 211 Cal. 93, 294 P. 717, 721, 722; United States v. Stanolind Crude Oil

Purchasing Company et al., 10 Cir., 113 F.2d 194, decided June 29, 1940.

[7] Champlin Refining Co. v. Corporation Commission, supra, 286 U.S. at pages 233, 234, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Id., D.C., 51 F.2d 823, 826; Ohio Oil Company v. Indiana, supra, 177 U.S. at page 210, 20 S.Ct. 576, 44 L.Ed. 729; Ex parte Wood, supra, 34 Cal.App.2d 546, 93 P.2d at page 1061; People v. Associated Oil Company, supra, 211 Cal. 93, 294 P. at pages 722, 723.