No. 25,668.

The State of Kansas, ex rel. Charles B. Griffith, as Attorney-general, etc., *Plaintiff,* v. Jonathan M. Davis, as Governor, etc., *Defendant.*

No. 25,602.

Consolidated School District No. 88, in Thomas and Sheridan Counties, *Plaintiff,* v. Norton A. Turner, as State Auditor, etc., *Defendant.*

No. 25,649.

H. T. Ritchie, *Plaintiff,* v. Frank Dunn, as Mayor of the City of Wichita, etc., *Defendant.*

SYLLABUS BY THE COURT.

Revised Statutes of 1923—*Chapter 144, Laws of 1923, Entitled "An Act Relating to the Revised Statutes of 1923," is Constitutional and Valid.* The statute of 1923 entitled "An act relating to the Revised Statutes of 1923," consummating revision of the statutory law of the state, contains a single subject, which is clearly expressed in the title of the statute, and is not invalid for any of the following reasons:

(a) The bulk of the revision was contained in identified "Assembled Sections," which were referred to but not incorporated in the bill.

(b) The "Assembled Sections" were not read in either house of the legislature during consideration of the bill, and were not read section by section on final passage of the bill.

(c) The act established as law matter not contained in any statute, and matter contained in a previously existing statute which had been repealed, and amended and repealed existing statutes.

Original proceedings in mandamus. Opinion filed October 11, 1924.

In case No. 25,668, *Charles B. Griffith,* attorney-general, *Donald W. Stewart,* and *Frank C. Baldwin,* assistant attorneys-general, for the plaintiff. *John K. Bowman,* of Garnett, for the defendant.

In case No. 25,602, *Justin D. Bowersock, Robert B. Fizzell,* and *Guy V. Head,* all of Kansas City, Mo., for the plaintiff. *Charles B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the defendant. *James G. Martin,* of Wichita, as *amicus curiœ.*

In case No. 25,649, *Lew E. Clogston,* of Wichita, for the plaintiff. *Robert C. Foulston* and *George Siefkin,* both of Wichita, for the defendant. *Chester I. Long,* of Wichita, and *Richard E. McIntosh,* of Topeka, for the Commission to Revise the General Statutes.

The opinion of the court was delivered by

Burch, J.: The questions involved and the conclusions of the court respecting them were stated in the memorandum filed when the cases were decided (*The State, ex rel., v. Davis, Governor,* ante, p. 211, 225 Pac. 1064). The reasons for the conclusions may now be briefly stated.

At the court's request, the commissioners to revise the statutes filed a brief. The brief contains a history of the revision of 1923, which is appended to this opinion. From this history it will be observed the statute of 1921 providing for revision contemplated changing, rewriting, and revising, which would require what was called reënactment. The term necessarily meant enactment. If the law were to remain the same without substantive change, reenactment would be superfluous. If substantive changes were made by the commission, or by the legislature itself, they could not acquire the force of law without enactment. The result is, we are not concerned with what the commission did, but with what the legislature of 1923 did. We are not even concerned, except historically, with what the legislature of 1921 did.

Legislation in this state is initiated by a bill containing one subject, which must be clearly expressed in the title. Every bill must be read on three separate days in each house, except in case of emergency, but reading by sections on final passage may not be dispensed with. No law shall be revived or amended unless the new act contain the entire act revived or the section or sections amended, and the section or sections amended shall be repealed. (Const. Art. 2, §§ 12, 15, 16.)

What was the subject engaging the attention of the legislature throughout consideration and passage of the act of 1923? The subject was review of the body of statute law of the state, considered as an entity and in its entirety, for the purpose of bettering it in form and content. That subject was single, within the meaning of the constitution. In 1909, the code of civil procedure was revised.

The subject was single, although it embraced many topics, and systematic treatment of the aggregation of laws having statutory authority was a single subject, although embracing many themes. So far as freedom from duplicity is concerned, that subject could be dealt with, subject to other constitutional requirements, in any way the legislature saw fit. The legislature was not limited to compilation. It could include, exclude, correct, consolidate, rearrange, and improve in all the ways improvement may be accomplished. In other words, it could revise, according to the legal and popular meanings of that term. (Black's Law Dictionary and Webster's New International Dictionary, title "revise.")

In this instance the legislature undertook to revise. To give clear expression to the subject of the bill, the legislature chose to adopt a title indicating revision and, under numerous decisions of this court, collated in the annotation to section 16 of the constitution contained in the Revised Statutes of 1923, the subject of the act of 1923 was clearly expressed by the title, "An act relating to the Revised Statutes of 1923."

The case of *The State v. Sholl*, 58 Kan. 507, 49 Pac. 668, deals with singleness of subject and clearness of expression of subject in title. The legislature, by passage of a single bill, undertook to repeal acts and parts of acts relating to cities, railroads, counties, courts, civil procedure, raid claims, school lands, and other subjects. The decision is sufficiently indicated by the syllabus:

"Chapter 137 of the Laws of 1897, entitled 'An act to repeal or strike out certain redundant, obsolete and inoperative provisions of the General Statutes of 1889,' violates section 16 of article 2 of the constitution of this state, and is void. It contains a multiplicity of subjects which are not expressed in the title of the act, and, by repealing many sections, attempts to change the law on numerous, diverse, and disconnected subjects not indicated by the title.

"Section 16 of article 2 of the constitution applies as well to bills which change the law by repealing acts already in force as to the enactment of new laws; and where it is sought to change the law by repealing statutes then in force, the bill for that purpose must contain only one subject, which must be expressed in its title." (¶¶ 1, 2.)

It is not necessary to discuss soundness of the decision. For present purposes it may be conceded the bill contained distinct and unrelated subjects. Assuming repeal of diverse statutes may be accomplished by one repealing act, it may be conceded the title gave insufficient expression to the subject of the bill. Nevertheless, general revision of the whole body of the state's statutory law, for collective exhibition in systematic form, is a distinct and single subject

of legislative consideration and action, which is no more multifarious because it involves treatment of particulars germane to revision, than revision of a civil code, criminal code, or code relating to cities or taxation, is multifarious because of treatment of particulars germane to those subjects. While the constitution governs revisory legislation, the constitution is not blind to method and, for any revision to be scientific, the method necessarily includes elimination, condensation, redrafting and, so far as may be deemed proper to completeness of the scheme, supplements additions and revivals.

Senate bill No. 424 was considered and passed according to the mandates of the constitution. The Assembled Sections were not read on any day, in either house. How did they become statutory law? The answer is, by the bill's reference to the identified matter.

Legislation by reference is not a new device. It has been practiced by the congress of the United States throughout the period of its existence. The act organizing the territory of Kansas contained legislation by reference. The first territorial legislature adopted the common law of England and all acts of parliament made prior to the first year of James I, general in nature, and not repugnant to the constitution of the United States or the Kansas-Nebraska act, as the rule of action and decision. When the state constitution was framed, it did not, as did the constitutions of some other states with which the framers were familiar, forbid such legislation. The legislature has repeatedly resorted to the expedient, and this court has recognized such legislation as valid in the following cases: *Wichita v. Telephone Co.,* 70 Kan. 441, 78 Pac. 886; *Griffin v. Gesner,* 78 Kan. 669, 97 Pac. 794; *The State v. Shawnee County,* 83 Kan. 199, 110 Pac. 92; *The State v. Pauley,* 83 Kan. 456, 112 Pac. 141; *The State, ex rel., v. Howat,* 107 Kan. 423, 191 Pac. 585.

The Howat case dealt specifically with application of the provisions of the constitution relating to revival and amendment to legislation by reference.

As indicated above, the very purpose of revision being to establish, by the revising act, the statutory law of the state, the repeal of all statutes not included is germane to revision, and may be accomplished by the revision act. In the case of *Arkansas City v. Turner, State Auditor,* ante, p. 407, 226 Pac. 1009, the court announced the rule of construction in the event provisions of the re-

vised statutes should be found to be inconsistent or in conflict with each other.

In the argument of the governor's case it was contended that, because the act of 1923 referred to "all laws" included in the Assembled Sections, nothing became law by virtue of the act which was not already law. The contention is in opposition to the manifest intention of the legislatures of 1921 and 1923, not merely to compile, and thereby confuse the law by adding a vagrant volume to those already in existence, but to revise.

The result of the foregoing is, adopting an observation of the supreme court of Georgia respecting a similar work, the Revised Statutes of 1923 became, on publication, not merely evidence of the law, but the law itself.

The procedure to accomplish the revision of 1923 was substantially that employed in the adoption of the code of Georgia, under a constitution similar in all essential respects to our own. The code included a statute within the legislature's power to enact, but which had been declared unconstitutional for irregularity in enactment. In the case of *Central Railway Co. v. State,* 104 Ga. 831, 42 L. R. A. 518, it was held incorporation of the void act in the code reported by the revision commission and adopted by reference in the adopting act, gave it the force of law. The scope of the decision is indicated by the following paragraphs of the syllabus:

"The intention of the act of December 16, 1895, adopting the present code, and making the same of force, as the code of Georgia, is .to enact into one statute all the provisions embraced in that Code.

"This is not unconstitutional because the various sections of the code were not incorporated therein; nor because these sections were not read three times and on three separate days in each house of the General Assembly before the passage of the act.

"The act in question does not, within the meaning of article 3, section 7 and paragraph 8, of the constitution of Georgia, refer to more than one subject-matter, nor does it contain matter different from what is expressed in the title thereof.

"The effect of this act is to make a part of the law of the state all new matter embodied in the code of 1895 which could be constitutionally enacted by the legislature." (¶¶ 2, 3, 4, 5.)

The Georgia decision has been cited and quoted by the courts of many other states and, so far as discovered, always with approval. A commendatory reference appears in the opinion of this court formulated by Mr. Justice Dawson, in the case of *City of Wichita v. Sedgwick County,* 110 Kan. 471, 474, 204 Pac. 693.

The views of the court respecting the revision of 1923 are sustained by all the authorities, with but one or two exceptions. Authorities are collated in 79 Am. St. Rep., 456, 473; 86 Am. St. Rep., 267; 55 L. R. A. 833; 25 R. C. L., article "Statutes"; and in the opinion in *American Indemnity Co. v. Austin,* 112 Tex. 239 (1922).

### HISTORY OF THE REVISION.

The act providing for the revision of the statutes was House bill 694 of the legislative session of 1921, which was duly passed by the legislature, was approved by the governor March 15, 1921, and was published in the official state paper March 31, 1921. The pertinent provisions of that act are as follows:

"The supreme court of the state of Kansas shall appoint a Commission of three members, who shall have the same qualifications as justices of said court, and said Commission is hereby authorized to make a contract for the revision, compilation and editing of the General Statutes of Kansas, in one volume, with annotations of the supreme court and appellate court, to date of publication. Said Commission may employ an expert, competent for that purpose, and who is also competent to prepare an accurate index for such volume. The said Commission shall superintend and approve the same and cause such statutes to be printed under the direction of the State Printing Commission, at the state printing plant.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Before any copies of said statutes shall be printed or sold and delivered, all statutes revised or changed shall be submitted by said Commission to the legislature of the state of Kansas for reënactment. When said Commission shall certify that the laws changed, rewritten or revised have been duly reenacted by the legislature, and when it shall certify that it has examined and compared all the laws of a general nature in force, and that the said Revised Statutes are complete, and comply with the terms of this act, such Revised Statutes shall be deemed and held to be the Revised Statutes of Kansas, and evidence in all courts. Such authentication shall be printed in each copy. Thereafter in any bill to amend or repeal any law or section thereof contained in the Revised Statutes, it shall be sufficient to refer to the same by the running section number.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"It shall be the duty of the supreme court to appoint the Commission immediately upon the taking effect of this act. Said Commission shall qualify and immediately enter upon their duties."

In pursuance of that act, the supreme court appointed Chester I. Long, of Wichita; F. Dumont Smith, of Hutchinson; and Hugh P. Farrelly, of Chanute, as the Commission to Revise the General Statutes. This appointment was made in 1921, shortly after the passage of the act above referred to.

The Commission met in Topeka and proceeded to organize by the election of Chester I. Long as chairman of the Commission.

Because of the requirement that the statutes be printed at the state printing plant, the Commission was unable to make a suitable contract for the revision, compilation and editing of the statutes, and therefore proceeded to employ experts under the terms

of said act, and began the work of revising, compiling and editing the General Statutes. This work was begun in June, 1921, and continued until the legislative session of 1923.

In order that a thorough revision might be made of all the statutes which were conflicting, overlapping, indefinite, or obsolete, the Commission solicited suggestions from state and county officers and from members of the bench and bar, in the form of a questionnaire which was mailed to every judge in the state, to every practicing lawyer, to all administrative state officers and departments, and to county officers. All replies received were carefully examined by the Commission, and such revision was made as the Commission deemed necessary and expedient.

The detail work of the Commission was carried on by statements of conflicts, overlapping sections and duplications of acts and sections, which statements were designated as "Reports," and were duly numbered similar to original bills introduced in the legislature. These reports were initiated by the answers to the questionnaire above mentioned, by the assistants, and by letters and suggestions from lawyers and others on special propositions. Matters and suggestions relating to particular acts or sections dealt with on a report were attached to the numbered report relating to the same, of which each commissioner had a copy, as well as a copy of all subsequent matter pertaining thereto. The final determination of the Commission, as well as all intermediate steps in the handling of the report, was noted on the report, and the final work was carried into the revision.

It will be seen that this provides a record of the various steps taken by the Commission and its assistants prior to the recommendation to the legislature and the incorporation of the revised matter into the "Assembled Sections." All of these numbered reports, together with all material in connection with each report, have been bound and are filed in the office of the secretary of state.

In preparing the matter to be submitted to the legislature in 1923, in compliance with the act of 1921, the Commission began by preparing a compilation which contained all the laws found in the General Statutes of 1915, together with all Session Laws enacted since that time. In this first compilation all sections were included, so that a comparison might be had between the new and the old sections enacted by the legislature.

Following this compilation, a second compilation was made, in the preparation of which those sections which had been specifically repealed by the legislature since 1915 were omitted from the compilation. This compilation was used for reference and for the purpose of indexing all sections considered by the Commission, and the numbers of the various reports above mentioned may be obtained by referring to the section in this compilation.

A third compilation was made, in which the classification was

changed from the old classification of the General Statutes of 1915, and this compilation was used by the members of the Commission and its experts in considering the sections to be revised or changed.

For final submission to the legislature, a fourth compilation was made, which, for convenience, and as a means of identification, has been referred to throughout as the "Assembled Sections." This compilation contained all of the changes that were made by the Commission. When a section was merely edited by changing a misspelled word or any other such minor change, it was changed in this compilation. When a section was revised it was rewritten and the revised section was inserted in this compilation in place of the original section or sections which had been covered by the revised section.

All sections contained in the General Statutes of 1915 or in the Session Laws following the General Statutes of 1915 which had not been revised or changed by the Commission were included in the "Assembled Sections" in their original form.

It will be seen, therefore, that this compilation, designated as the "Assembled Sections," contained and fully set forth all of the work of the Commission and all of the changes made by the Commission.

The "Assembled Sections" were contained in a steel file in the office of the Commission to Revise the General Statutes in the capitol building, and were identified by the certificate of the Commission attached thereto.

These "Assembled Sections," therefore, took the place of an enrolled bill, and constituted the laws which the legislature enacted by the passage of the adoption bill.

For the purpose of fully informing the legislature of the changes that had been made by the Commission in the "Assembled Sections," the Commission prepared a report to the legislature, which was printed and placed upon the desk of each member of the legislature very early in the session of 1923. This report contained a reference to every section that had been revised or changed by the Commission, as well as to those sections which were reported for repeal or omitted by the Commission.

All revised sections were printed in full in this report, and on page 17 of the report appears the following:

"This part of the report contains, in tabulated form, by consecutive numbers, all the sections of the General Statutes of 1915, section by section, where any change has been made or any section revised by the Commission. This is followed by all the laws of a general nature in the Laws of 1917, 1919, 1920 and 1921 in regular order, showing where changes have been made.

"Where any section is not mentioned, it is to be understood that no change has been made."

By referring to this report and to the General Statutes and Session Laws, which were also on the desk of every member of the legislature, it was easy for any member of the legislature to ascertain just what sections had been changed by the Commission, as well

The State, *ex rel.,* v. Davis, *Governor.*

as the sections that had been left untouched; and every member of the legislature was advised by the Report of the Commission that the "Assembled Sections" contained the laws as found in the General Statutes of 1915 and subsequent Session Laws, except where changes were noted in the Report of the Commission.

Every member of the legislature had access at any and all times to the original "Assembled Sections" on file with and certified to by the said Commission. The members of the legislature availed themselves of the privilege of examining the "Assembled Sections" at various times during the session of 1923.

The first official action taken by the legislature was the introduction on January 10, 1923, by Senator Finney, of Senate concurrent resolution No. 2, which resolution is as follows:

*"Be it resolved by the Senate of the State of Kansas, the House of Representatives concurring therein,* That the judiciary committee of the Senate of the state of Kansas and the judiciary committee of the House of Representatives are hereby constituted a joint committee to examine the revision of the General Statutes prepared and reported by the Commission, Chester I. Long, F. Dumont Smith and Hugh P. Farrelly, together with the Assembled Sections now on file and in the possession of the Commission at its office in the capitol, and report to the Senate and House of Representatives. Said committee is directed to make said examination and report with all convenient speed."

Senator Finney then asked that the rules of the Senate be suspended, and asked unanimous consent of the Senate to advance the resolution to second and third reading at that time, which was done. The resolution was thereupon adopted (Senate Journal, page 6), and on January 16, 1923, the resolution was messaged to the House (House Journal, page 43).

On January 17, Representative Geddes moved that the rules be suspended, an emergency declared, and Senate concurrent resolution No. 2 be adopted. The motion prevailed. (House Journal, page 47.) The resolution was then messaged back to the Senate. (Senate Journal, page 39.)

On January 19, 1923, the governor informed the Senate that he had on January 18, 1923, approved Senate concurrent resolution No. 2. (Senate Journal, page 57.)

On January 27, 1923, the Senate committee on enrolled bills reported that Senate concurrent resolution No. 2 had been correctly enrolled and signed by the proper officers of the Senate and House. (Senate Journal, page 91.)

The concurrent resolution above mentioned was printed as chapter 246 of the Laws of 1923.

Pursuant to this Senate concurrent resolution, a joint subcommittee was appointed, consisting of five members of the judiciary committee of the Senate and eight members of the judiciary committee of the House, which joint subcommittee organized by electing Senator James W. Finley as chairman. This joint subcommittee

began its work by dividing Appendix "A" of the report of the Commission, which part of the report covered all "revised, changed and repealed sections, and reasons therefor," into six parts, each of which parts was assigned by the chairman of the joint subcommittee to a team composed of two members of the joint subcommittee. These teams of the joint subcommittee then carefully considered the part of the report assigned to them and reported back to the chairman of the joint subcommittee such changes as they thought should be made in the "Assembled Sections" as set forth and explained in Appendix "A" of the Report of the Commission.

A meeting of the full joint subcommittee was then held, at which all changes recommended by these various teams were carefully considered by the full joint subcommittee, and some suggested changes were rejected by the full joint subcommittee, while others were approved.

The Commission acceded to most of the changes suggested by this joint subcommittee, and those changes which were not acceded to by the Commission were submitted to the full joint committee created by Senate concurrent resolution No. 2.

The Commission suggested some changes to cover typographical and other minor errors, and these suggestions were submitted to the joint committee along with the report of the joint subcommittee.

All changes then recommended or agreed to by the full joint committee created under the provisions of Senate concurrent resolution No. 2 were included by the Commission in a Supplemental Report, which was printed and delivered to each member of the legislature before the adoption bill was considered.

Every member of the legislature then had before him, not only the changes made by the Commission and incorporated. in the "Assembled Sections," but also the changes made by the joint committee created under the provisions of Senate concurrent resolution No. 2, all of which were also included in the Assembled Sections before the Supplemental Report was submitted and were a part thereof when the adoption bill was passed.

The joint committee then. made the following report:

"Your joint committee appointed to examine the report on the work of the commission to Revise the General Statutes beg leave to report as follows:

"A joint subcommittee consisting of five from the Senate and eight from the House was appointed to examine the work of the Commission. Hon. Jas. W. Finley was elected chairman of the joint subcommittee. The report of the Commission was subdivided and carefully examined. The report of the joint subcommittee was then submitted to the Commission. Very few changes were found necessary; some of them were typographical errors and slight changes in phraseology. The Commission accepted most of the suggestions and made the necessary changes in the Assembled Sections. A few suggestions were submitted to the full joint committee at a meeting on Tuesday, February 13, and were decided by this joint committee.

"The Commission accepted in each instance the decisions of the joint committee and made corresponding changes and corrections in the Assembled Sections, so that the Assembled Sections and the completed Report of the Commission have the full approval of this joint committee.

The State, *ex rel.,* v. Davis, *Governor.*

"Minor changes have been made since the Commission finished the revision in the printed report submitted to the legislature. None of the changes are of particular importance, and all are embodied in a supplemental report which will be printed and submitted to you.

"Appendix 'A' in the printed report and this supplemental report will show to each member of the legislature, definitely and exactly, every change that has been made by the Commission.

"The joint subcommittee has examined the Assembled Sections and finds the work of the Commission has been properly done, complying in every respect with the provisions of chapter 207 of the Session Laws of 1921, and the work of the Commission is hereby approved.

"We further find that the Assembled Sections certified to by the Commission completely and accurately contain the revision and should be adopted by this legislature as the Revised Statutes of Kansas, 1923, when completed by the addition of the laws of a general nature of this session.

"The judiciary committees of the Senate and House will report an *adoption bill that will enact these 'Assembled Sections' into law when published.*

"Under the direction of the joint committee, this report is signed by the chairman of the judiciary committee of the Senate, the chairman of the judiciary committee of the House of Representatives, the five members of the joint committee from the Senate and the eight members of the joint committee from the House, constituting the joint subcommittee who examined the work of the Commission."

(Signed by Chairman, Senate Judiciary Committee; Chairman, House Judiciary Committee; Senate Members of Joint Subcommittee; House Members of Joint Subcommittee.)

(Senate Journal, page 250; House Journal, page 254.)

This report was made to accompany Senate bill No. 424 which was introduced in the Senate on February 15, 1923, by the judiciary committee. The bill as introduced, and as finally passed without amendment, is as follows:

An ACT relating to the Revised Statutes of 1923.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1. The following laws shall constitute the General Statutes of Kansas: All laws included by Chester I. Long, F. Dumont Smith and Hugh P. Farrelly, as the Commission to Revise the General Statutes, in the assembled sections on file with and certified to by said Commission, fully examined and identified by the certificate and reported for adoption by the joint committee of the Senate and House of Representatives, including the revised sections which are hereby reënacted; all laws reported by the Commission which it has included by reference; all other laws of a general nature enacted at the present session. All of the above laws are hereby adopted, and shall take effect and be in force, when certified by the Commission, as provided in Laws of 1921, chapter 207, section 3, and published as the Revised Statutes of Kansas of 1923.

SEC. 2. The Commission shall incorporate in the assembled sections the laws of a general nature passed at the present session, arrange, edit, number, insert headings, history and cross-references, annotate and index all sections, and shall then certify and publish the same as the Revised Statutes of 1923.

SEC. 3. When the work of the Commission is finally completed, the assembled sections, duly certified as aforesaid, shall be placed on file in the office of the secretary of state as a permanent record for future reference.

SEC. 4. The duties imposed upon said Commission may be performed by a majority thereof.

43—116 KAN.

Sec. 5. The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object.

Sec. 6. The repeal of acts and parts of acts herein provided for shall not revive any law heretofore repealed or superseded, nor any office heretofore abolished; neither shall it affect any act done or right accruing or accrued, or any suit or proceeding in any civil action before the repeal takes effect, but the proceedings therein shall, when necessary, conform to the provisions of the Revised Statutes; nor shall such repeal affect any penalty or forfeiture incurred before it takes effect under any of the laws repealed, except that when a punishment, penalty or forfeiture is mitigated by the provisions of the Revised Statutes, such provisions may be extended and applied to any sentence or judgment pronounced after said repeal; nor shall such repeal affect any suit or prosecution pending at the time it takes effect, for an offense committed or forfeiture incurred under any of the acts repealed, except that the proceedings therein shall when necessary conform to the provisions of the Revised Statutes.

Sec. 7. When a limitation or period of time prescribed in any of the acts repealed, for acquiring a right, or barring a remedy, or for any other purpose, has begun to run, and the same or a similar limitation is prescribed in the Revised Statutes, the time of limitation shall continue to run, and shall have like effect as if the whole period had begun and ended under the operation of the Revised Statutes.

Sec. 8. The provisions of the Revised Statutes so far as they are the same as those of prior laws, shall be construed as a continuation of such laws, and not as new enactments.

Sec. 9. The arrangement and classification of the several sections of the Revised Statutes have been made for the purpose of convenience and orderly arrangement, and therefore no implication or presumption of a legislative construction is to be drawn therefrom.

Sec. 10. All acts of a general nature, not enumerated in section 1 of this act, are hereby repealed upon the publication of the Revised Statutes of 1923.

Sec. 11. This act shall take effect and be in force from and after its publication in the official·state paper.

On February 16, Senate bill No. 424 was read the second time and referred to the committee of the whole senate. (Senate Journal, page 255.)

· On February 23, Senator Price moved that Senate bill No. 424 be made a special order for the following Tuesday, February 27, at 10:30 a. m. The motion prevailed. (Senate Journal, page 332.)

On February 26, the following reports were made and spread on the journal of the Senate:

"REPORT OF SECOND JUDICIARY SUBCOMMITTEE.

"*To the Joint Committee of the Senate and House considering the Revision of the Statutes:*

"Your second subcommittee appointed to consider the supplemental report of the Commission to Revise the Statutes beg to report that we have examined said Supplemental Report and hereby approve the same and recommend its adoption."

(Signed by Senate and House Members of Second Subcommittee.)

"The joint committee of the Senate and House appointed to consider the

reports of the Commission to Revise the Statutes have had under consideration the Supplemental Report of the said Commission to its first report, and hereby approve the same and recommend its adoption."

(Signed by Senate and House Members of Joint Committee.)
(Senate Journal, page 354.)

On the following day, February 27, Representative Geddes moved that the above reports be spread upon the journal of the House for that day. The motion prevailed. (House Journal, page 357.) The said reports appear on page 357 of the House journal in the same form as in the Senate journal at page 354, and as set out above.

On February 27 the committee of the whole senate reported that it had had under consideration Senate bill No. 424, and recommended that the same be passed. The report was adopted. (Senate Journal, page 357.)

On February 27, under "Third Reading of Bills," Senator Price moved that the rules be suspended, an emergency declared, and Senate bill No. 424 be placed on third reading at that time. The motion prevailed. Senate bill No. 424, "An act relating to the Revised Statutes of 1923," was read the third time, and the question being, Shall the bill pass? the roll was called, with the following result: Yeas 34, nays 0; absent or not voting, 6. (Senate Journal, page 359.)

On February 27, 1923, Senate bill No. 424 was messaged to the House. (House Journal, page 362.)

Senate bill No. 424 was thereupon read the first time on February 27, 1923. (House Journal, page 362.)

On February 28, 1923, Senate bill No. 424 was read the second time in the House and referred to the judiciary committee. (House Journal, page 363.)

On March 1, 1923, the judiciary committee of the House reported out Senate bill No. 424 with the recommendation that it be passed. (House Journal, page 377.)

On March 2 the committee of the whole house reported that it had had under consideration Senate bill No. 424, and recommended that the same be passed. The report was adopted. (House Journal, pages 396, 397.)

On March 2 Representative Endres moved that the rules be suspended, an emergency declared, and Senate bill No. 424 be placed on third reading at that time. The motion prevailed. Senate bill No. 424, "An act relating to the Revised Statutes of 1923," was read the third time, and the question being, Shall the bill pass? the roll was called, with the following result: Yeas 105, nays 0; absent or not voting, 19. (House Journal, page 398.)

On March 3 the House messaged the bill back to the senate. (Senate Journal, page 393.)

On March 5, 1923, the Senate committee on enrolled bills reported that Senate bill No. 424 had been correctly enrolled and signed by the proper officers of the Senate and House. (Senate Journal, page 418.)

On March 6, 1923, the governor informed the Senate that he had on that day approved Senate bill No. 424. (Senate Journal, page 436.)

Original Senate bill No. 424, therefore, passed both the Senate and the House without amendment and without a dissenting vote, and was published in the official state paper March 9, 1923, and in the Session Laws of 1923 as chapter 144.

The foregoing procedure in the legislature shows that each and every member of the legislature had before him all of the work of the Commission to Revise the General Statutes, together with the changes made therein by the joint judiciary committee, which committee was instructed to examine the work of the Commission and to report thereon.

It will also be seen from the foregoing statement that what the legislature in fact adopted and what the legislature intended to adopt was the "Assembled Sections" on file with and certified to by the Commission to Revise the General Statutes, and that every member of the legislature was advised what was contained in those "Assembled Sections."

In order to further advise the legislature of the effect of passing the adoption bill, there was contained in "Appendix F" of the report of the Commission a statement of the manner in which it was proposed to submit the revision to the legislature; a copy of the law under which the Commission was appointed and performed its work; an opinion by Hon. Frank Doster, former chief justice of the supreme court, on the proposition, "How the bill may be enacted and its title"; a statement of the proceedings in Georgia on the bill adopting the code of Georgia, together with a copy of the adoption act of that state; a comparison of the pertinent provisions of the constitution of Georgia with the constitution of Kansas; and a brief on the subject of "Legislation by Reference," which considered the question, "Can the legislature by one bill adopt by reference the Revised Statutes of 1923?" This brief set forth the law relating to adoption by reference and cited various authorities relating thereto.

There was also contained in the report a draft of the proposed adoption bill, which was changed slightly before being introduced into the legislature, and the draft of the adoption bill as amended was printed as "Appendix K" of the Supplemental Report to the legislature.

By referring to Appendix "F" of the report of the Commission it will readily be seen that the Commission put before the legislature of 1923 all of the propositions involved in connection with the adoption of the Revised Statutes.

The Commission informed the legislature of what had been done and of the effect of similar adoption proceedings in other states.

Having all of this information before it, the legislature adopted Senate bill No. 424, which put into effect the Revised Statutes as

contained in the "Assembled Sections" on file with and certified to by the Commission to Revise the General Statutes.

In accordance with the terms of the adoption bill, the "Assembled Sections" were published as the Revised Statutes of 1923 and duly certified to by the Commission as provided by Laws of 1921, chapter 207, section 3, on the 27th day of December, 1923, and under the terms of the adoption bill said Revised Statutes took effect and were in force from and after December 27, 1923.

The "Assembled Sections" and all of the documents relating to the revision, accumulated by the Commission, carefully catalogued and indexed, and with complete cross references, are filed as a public record in the office of the secretary of state.