No. 34,995

H. Hunziker, *Appellee*, v. School District No. 26, in Sheridan County (J. H. Fromme, County Treasurer, and Fred Conard, County Clerk, *Defendants*), *Appellant*.

(109 P. 2d 115)

Opinion filed January 25, 1941.

Ray C. Sloan, of Hoxie, E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan and Eldon R. Sloan, all of Topeka, for the appellant.

W. L. Sayers and W. P. Sayers, both of Hill City, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action for a declaratory judgment. Defendant's demurrer to the petition was overruled and it appeals. The question to be determined is the liability of the territory of a disorganized school district for the payment of the bonded indebtedness of the district to which it was attached.

The petition disclosed that prior to August 4, 1927, there was in existence in Sheridan county school district No. 28, embracing in its boundaries at least ten sections of land, the plaintiff being then and ever since the owner of a one-half section thereof. That

the district failed to maintain a school for three consecutive years, and on August 4, 1927, under the provisions of Laws 1917, ch. 275, the county superintendent disorganized the district and attached the territory to school district No. 26, which maintained a graded school. At the time of the disorganization of district No. 28 it had no bonded indebtedness. Its schoolhouse was sold and the proceeds of the sale went to and were received by district No. 26. At the same date district No. 26 had an outstanding bonded indebtedness of $40,000, which became due and delinquent, and on March 1, 1937, the district issued refunding bonds in the sum of $44,500 and with the proceeds refunded the outstanding bonded indebtedness. Beginning in 1937, district No. 26 caused a levy to be made on the entire territory of the district, including that formerly comprised in district No. 28, for the purpose of paying interest on and accumulating a sinking fund to retire the refunding bonds, the various levies for 1937, 1938 and 1939 being set forth.

Plaintiff further alleged that the levy and tax represented an unlawful charge against the property in the territory formerly constituting district No. 28 and particularly against the property of the plaintiff; that the tax is substantial and the defendant district continues to levy against plaintiff's property to raise funds to pay the above-mentioned refunding bonds; that he has paid the first half of his 1939 tax under protest, and that he now owes for the last half of that year. That the purpose of the action is to determine the right of district No. 26 to levy a tax on the property formerly included in district No. 28 to pay interest on and retire the bonded indebtedness, and that it should be determined the district has no such right, but the defendant district continues to exercise such claimed right and authority. Defendant's demurrer on the ground the petition did not state a cause of action was overruled, and it appeals.

In a preliminary way, it may be stated that appellee does not contend there is any specific statutory provision which compels the relief he seeks, but that the statutes generally compel the result, while the appellant contends that there being no such specific provision, under the law generally it has the right and authority to make the levy. The answer requires consideration of the statute under which district No. 28 was disorganized and possibly other statutes. There is no contention but that the present bond issue represents an indebtedness of district No. 26 existing prior to the annexation.

Under Laws 1917, ch. 275, sec. 1, it was provided that if a school district failed for three successive years to maintain a school as therein provided, the district should be disorganized and attached to adjacent districts, or where the district was adjacent to a third-class city maintaining a high school or graded school it should be attached to the school district in which the city is located. Section 1 of this act was amended by Laws 1921, ch. 228, and later appeared in revised form as R. S. 1923, 72-818. This last mentioned section was amended by Laws 1933, ch. 254, and was repealed by Laws 1935, ch. 255. The various changes made do not affect the question now submitted. Under the allegations of the petition, school district No. 26 maintained a graded school, but it is not disclosed whether the district includes a third-class city. Under section 2 of the first mentioned act, now appearing as G. S. 1935, 72-819, provision is made for payment of floating indebtedness of the disorganized district by a levy to be made by the board of county commissioners on the territory of the district. Under section 3, now appearing as G. S. 1935, 72-820, any money, unpaid taxes, buildings and other property of the disorganized district shall be applied as provided in sections 8931 and 8932, G. S. 1915 (G. S. 1935, 72-812, 72-813), and any bonded indebtedness be paid as provided in section 8928, G. S. 1915 (G. S. 1935, 72-809). Reference to those sections discloses they are parts of Laws 1901, ch. 307, providing for disorganization of school districts which have become depopulated as defined therein, for disposition of property, payment of bonded debt, etc. Section 8931 provided moneys and unpaid taxes should be applied to payment of floating and bonded indebtedness, any remaining sums to go to the districts to which the disorganized territory was attached. Section 8932 provided for sale of the buildings and other property and for similar disposition of the proceeds. Section 8928 provided that if the disorganized district had a bonded indebtedness, the county commissioners should levy a tax upon the real and personal property in such disorganized territory sufficient to meet the interest and provide a sinking fund, and provision for refunding the debt is also made. Section 10 of the above chapter 307, later appearing as G. S. 1915, sec. 8933, and now appearing as G. S. 1935, 72-814, and not referred to in Laws 1917, ch. 275, read:

"The territory of any school district so disorganized shall not be liable for any debt, floating or bonded, or any contract of any district to which it may be attached, existing at the time of such attachment."

Appellant contends that because the last-quoted section was not referred to in Laws 1917, ch. 275, but the other provisions quoted were specifically mentioned, it must be concluded a disorganized district must not only pay its own debt, floating or bonded, and that any excess of its taxes, money or property must be delivered to the district to which it was attached, but that the property in the disorganized territory becomes liable for the existing debt of the district to which it was attached. It may be observed that if that be true, this result might have followed. Had disorganized district No. 28 had a $40,000 bond issue outstanding, it would have had to pay it, and also would have had to pay its ratable part of the $40,000 bond issue of district No. 26 to which it was attached. It may be further observed that under the terms of the statute authorizing disorganization, it would have been possible to attach the disorganized territory to two adjoining districts. If one had a heavy bonded indebtedness and the other had none, a very unfair and inequitable result would follow, if appellant's contention is good.

In support of its contention that because the statute does not make specific provision otherwise, the territory of the disorganized district is liable for the payment of the liabilities of the annexing district, appellant directs our attention to 56 C. J., p. 732 (Schools, § 856), reciting:

"Property in territory annexed is liable to assessment for the payment of bonds and liabilities of the annexing district existing previous to the annexation, and no express statutory provision is necessary to impose such liability."

In the same text, section 859, it is said:

"Under constitutional or statutory provisions limiting the right to tax to pay a bonded school indebtedness to real estate which was taxable for that purpose at the time the indebtedness was created, property annexed to a school district already subject to a bonded indebtedness cannot be taxed to help retire that debt."

All persons possessing the qualifications of electors and who have been residents of the district for thirty days prior to the time of offering to vote are entitled to vote at any school district meeting (G. S. 1935, 72-404), and no bonds of any district shall be issued until favorably voted on by a majority of the qualified electors of the district (72-2001). Such bonds must be registered, and the register must contain the number of sections of land in the district issuing such bonds, and the number of acres assessed and subject to taxation in that district (72-2003), and it is made the duty of the

board of county commissioners to make an annual levy upon all the taxable property in the district, sufficient to pay the interest and bonds issued as they mature, the taxes so collected to be a specific fund for the payment of interest on such bonds and for their payment as they mature (72-2004). Although it is not positively stated, it seems clear that the lands in the district at the time the bonds are issued are liable for the full payment of principal and interest. Any doubt to the contrary is resolved by the statutes above reviewed, and those hereafter mentioned.

Our statutes with reference to bonds define a municipality as every corporation or quasi-corporation empowered to issue bonds in payment of which taxes may be levied (G. S. 1935, 10-101), provide how bonds shall be executed by a school district (10-105), and that all municipal bonds shall constitute a general obligation of the municipality issuing the same (10-112), and that whenever a part of the territory of a municipality has been detached, or whenever it has been disorganized and the territory attached to some other municipality, the detached territory shall be liable for the payment of all bonds issued by such municipality before such detachment or disorganization, and provision for compelling payment is made. It would seem to follow the issued bonds had all the properties of a lien on the territory in the municipality when the bonds were issued.

It would appear, also, that in many instances where annexation or detachment of territory or change of boundary lines was the subject of statutory consideration, that express provision has been made. Under G. S. 1935, ch. 72, art. 9, providing for consolidation of school districts, provision is made for assumption of a proportionate share of the existing indebtedness of the consolidated or union district, etc. Certain first-class cities may attach territory for school purposes, and after the order of attachment the attached territory shall be subject "to taxation and bear its full proportion of all expenses incurred in the erection of school buildings and in maintaining the schools of said city." (72-1725.) Further, in other first-class cities if territory be detached, it shall remain liable for its proportionate share of any bonded indebtedness, etc. (72-1744.) Territory attached for school purposes to second-class cities shall bear "its full proportion of all expenses incurred in the erection of school buildings and in maintaining the schools of the city." (72-1803a.) And note provisions for adjustment of property rights of a school district which is included within the territorial limits of

a first- or second-class city occasioned by the extension of the boundaries of the city. (72-5316, 72-5317, 72-5318.) With reference to county and township bonds, which are expressly made a lien upon real estate (G. S. 1935, 10-1001), it is provided that no person or property in territory attached, shall be subject to taxation for the payment of principal or interest of bonds issued previous to the attachment (10-1002), but that detached property shall remain subject in the same manner as though no change of boundary lines had been made (10-1003).

Appellant directs our attention to *Young v. Regents of State University,* 87 Kan. 239, 253, 124 Pac. 150, and *Alter v. Johnson,* 127 Kan. 443, syl. ¶ 1, 273 Pac. 474, and argues the trial court and this court may not depart from the plain terms of an act; that a court is not warranted in looking further than the act itself to determine legislative intent, and if there is a defect or omission, it must be supplied by the legislature. The premise is sound, but the mere failure of the legislature to make specific provision that the attached territory should not be liable for the existing indebtedness of the district to which it was attached does not make it automatically follow that the attached territory shall be liable.

It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history. (*Jones v. The State, ex rel.,* 1 Kan. 273; *State v. Bancroft,* 22 Kan. 170; *Intoxicating-Liquor Cases,* 25 Kan. 751; *Noecker v. Noecker,* 66 Kan. 347, 71 Pac. 815; *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835; *Railway Co. v. Cowley County,* 103 Kan. 681, 684, 685, 176 Pac. 99; *Schmitz v. Schmitz,* 124 Kan. 546, 549, 261 Pac. 824; *State, ex rel., v. Horn,* 126 Kan. 591, 270 Pac. 597; *State v. Lebow,* 128 Kan. 715, 280 Pac. ,773; *Clark v. Murray,* 141 Kan. 533, 41 P. 2d 1042; *State, ex rel., v. Gleason,* 148 Kan. 1, 14, 15, 79 P. 2d 911; *Johnson v. Hensley,* 150 Kan. 96, 90 P. 2d 1088.)

In the case before us, we have to determine whether the omission to excuse the attached territory from liability means that it was intended there should be such liability. It has been demonstrated that in every instance where the legislature has spoken affirmatively, it has relieved the attached territory from liability for the debts of

the political subdivision to which it was attached, or has provided for proportioning the same. Here it did not say the property in the attached territory should be liable, and we think by reason of its silence it did not intend any such result.

The ruling of the trial court on the demurrer was correct and is affirmed.