No. 43,289

J. P. HARRIS, et al., *Appellees*, v. PAUL R. SHANAHAN, as Secretary of State, et al., *Appellants*.

(390 P. 2d 772)

Opinion filed March 30, 1964.

*William M. Ferguson,* Attorney General, of Topeka, argued the cause, and *Park McGee,* Assistant Attorney General, of Topeka, was with him on the briefs for appellants.

*William Y. Chalfant,* of Hutchinson, argued the cause for appellees.

The opinion of the court was delivered by

FATZER, J.: The nature, facts and history of this action are set forth in our earlier opinions of January 31, 1963 (*Harris v. Shanahan,* 191 Kan. 1, 378 P. 2d 157), and December 5, 1963 (*Harris v. Shanahan,* 192 Kan. 183, 387 P. 2d 771), the latter having declared both the 1963 apportionment of the Senate, enacted by Senate Bill 440 (Laws 1963, Ch. 13), and the 1961 apportionment of the House of Representatives (G. S. 1961 Supp., 4-103) to be unconstitutional and void. Having thus ruled, we said:

"It is a matter of public knowledge that the legislature will convene in budget session on the second Tuesday in January, 1964, for 30 days and then adjourn. (Art. 2, Sec. 25.) This court feels certain that the governor will invoke constitutional processes and call the legislature into special session which will then be assembled at the state capitol, and that the legislature will enact valid apportionment acts apportioning the state into legislative districts pursuant to Article 2, Section 2, and Article 10, Sections 1 and 2 of our Constitution. Accordingly, if reapportionment of the state is accomplished in full compliance with the constitutional mandate, it may not be set aside by this court during its constitutional life and would not be subject to alteration until the next constitutionally established reapportionment period. Consequently, it would follow that judicial action would cease and the judgment of the court below pertaining to equitable relief as well as the manner of holding future elections as therein directed would die of its own terms.

"For reasons stated, we withhold further determination of the appeal, except, of course, our jurisdiction to hear the matter further. This will afford the governor an opportunity to call the legislature into special session, and for it to consider the adoption of apportionment acts based upon the 1963 state census in accordance with Article 10, Sections 1 and 2. In the meantime the record will be held for the purpose of such further action as is deemed advisable and within such reasonable time as the circumstances may demand." (l. c. 215.)

Thereafter, and on February 10, 1964, the governor issued his proclamation calling the legislature into special session on February 17, 1964, to enact such apportionment statutes as would comply with the constitutional mandate pertaining thereto. On the date appointed, the legislature duly convened in special session and sub-

sequently and on February 21, 1964, enacted Senate Bill No. 2, which apportioned the state into 40 senatorial districts, and House Bill No. 2, which apportioned the state into 125 representative districts. Those bills were duly signed by the governor on February 24, 1964, and thereafter published in the official state paper, thereby making the acts effective.

On February 28, 1964, counsel for both parties filed a joint motion requesting this court to consider the 1964 apportionment acts and judicially approve those measures as being in compliance with Article 2, Section 2, and Article 10, Sections 1 and 2 of the Consitution of Kansas; to affirm the judgment of the court below, and to declare that the equitable relief granted therein, as well as the manner of holding future elections, had died of its own terms. Attached to the joint motion were copies of both apportionment acts and maps of the state containing population statistics based on the 1963 state census and showing the respective senatorial districts and districts of the House of Representatives created thereby and the population of all such districts, as well as each district number. The joint motion alleged that, among other things, Senate Bill No. 2 repealed G. S. 1949, 4-102, and Chapter 13, Laws of 1963, and that House Bill No. 2 repealed G. S. 1961 Supp., 4-103.

Subsequently, and on March 4, 1964, counsel filed a supplemental joint motion asking this court to take judicial notice of and consider documents of the Legislative Council Research Department attached thereto which showed, among other things, the area and population statistics of the five representative districts apportioned to Johnson County by House Bill No. 2 and the population of each ward and precinct of the incorporated cities of Johnson County, based on the 1963 census which was used by that department and the House Committee on Legislative Apportionment in determining the apportionment of those five representative districts, and upon which population statistics and ward and precinct areas the five representative districts were finally determined and established.

Upon the filing of the joint motion, this court ordered counsel to file briefs and present oral argument thereon. The motion was heard on its merits on March 6, 1964, and we shall consider each act to determine its validity.

The joint motion alleged, "That in the opinion of the movants, Senate Bill No. 2 operates to apportion the Kansas Senate in accordance with the requirements of the Kansas Constitution." It may

be said that the apportionment of senatorial districts by Senate Bill No. 2 is essentially the same as that attempted by the void 1963 act (Laws 1963, Ch. 13), with minor adjustments made for subsequent population changes revealed by the 1963 state census. Based upon the 1963 state census population of 2,172,296, an average-sized senatorial district should now contain 54,307 people. As shown by the map of Kansas attached to the joint motion and the geographical boundaries and population statistics for each senatorial district shown thereon, Senate Bill No. 2 apportioned the state into 40 districts of approximately equal population, none of which varied more than approximately 14 percent from the average population figure of 54,307. The smallest district created by the new act contains 47,114 persons, while the largest has 61,920, and all but nine districts vary less than 10 percent above or below the average district figure. Because of the 1963 urban and rural population patterns within the larger populated counties, it is difficult for the legislature to establish senatorial districts which more nearly approximate the ideal or average district figure than that contained in the new act. As we previously stated, in the apportionment of the state into senatorial districts, the legislature is not confined to county boundary lines, but the resulting districts should, where possible, be compact and contain a population and area as similar as may be in its economic, political, and cultural interests, all as determined by the legislature in its discretion, not acting arbitrarily or capriciously. (*Harris v. Shanahan*, 192 Kan. 183, 205, 387 P. 2d 771.) Accordingly, we hold that Senate Bill No. 2 of the 1964 special session represents a valid exercise of legislative power, and find that the act and the apportionment of senatorial districts therein contained constitute as close an approximation to exactness as possible as required by Article 10, Section 2 of the Kansas Constitution, and that the apportionment accomplished thereby is valid and constitutional.

With respect to House Bill No. 2, the joint motion alleged, "That in the opinion of the movants, the apportionment plan contained in House Bill No. 2 is in compliance with the Kansas Constitution." As determined in *Harris v. Shanahan*, 192 Kan. 183, 204, 205, 209, 212, 213, Syl. ¶ 14, 387 P. 2d 771, it was recognized by those who framed the Constitution that the districts of the House of Representatives were to be apportioned to the several counties, that is, each organized county was to have at least one representative and seats not allocated on a geographical basis were to be apportioned

to counties properly entitled to them by virtue of population, and each county entitled to more than one such seat was to be divided into as many districts equal or substantially equal in population as it had representatives. In no case was a representative district to include territory in more than one county.

G. S. 1949, 4-101 fixes the size of the House of Representatives at 125 members. The act in question apportions one member to each of the 105 organized counties, and then apportions the 20 "extra" seats among the five most populous counties according to the method of equal proportions as recommended by this court in its opinion filed December 5, 1963. (*Harris v. Shanahan,* supra.) in accordance with that method, Sedgwick County was apportioned eight of the 20 "extra" seats, Wyandotte County: four; Johnson County: four; Shawnee County: three; and Reno County: one. Thus, the apportionment of the 20 "extra" seats together with the one apportioned to each of such counties on a geographical basis, gave a total number of representatives to the five most populous counties as follows: Sedgwick: nine; Wyandotte: five; Johnson: five; Shawnee: four; and Reno: two. As shown by the map of the state and the population statistics for each representative district apportioned pursuant to the method of equal proportions, the five multidistrict counties were divided into as many districts equal or substantially equal in population as the county was apportioned representatives, and in no case did any such representative district vary as much as 10 percent above or below the ideal or average district population for any such county. House Bill No. 2 of the 1964 special session is in full conformity with Article 2, Section 2, and Article 10, Sections 1 and 2 of the Kansas Constitution, and, indeed, it is a diligent and good faith effort by the legislature to achieve the standard of equality of representation demanded by the Constitution of Kansas, and we have no hesitancy in holding, subject to points hereafter discussed, that the act represents full compliance with the mandate of our Constitution with respect to apportionment of representative districts.

An examination of House Bill No. 2 reveals there is an irreconcilable conflict in the terms of the act in that it provides ". . . all of wards 1 and 2 . . . of the city of Prairie Village . . . shall constitute the eleventh representative district," and that "Precinct 4 of ward 2 . . . of the city of Prairie Village . . . shall constitute the thirteenth representative district." Thus the act

purports to place precinct 4 of ward 2 of the city of Prairie Village in both the 11th and the 13th representative districts.

When the governor signed House Bill No. 2 on February 24, 1964, he noticed this obvious conflict on the face of the bill, and in a written message he stated:

"I have signed House Bill No. 2 as passed by the Legislature and in conformity with the requirements of Article 2, Section 14 of the constitution.

"This statement is attached to the bill prior to its enrollment and engrossment and prior to expiration of three days from its delivery for signature and prior to publication. It is attached for the purpose of explaining the intent attendant approval of the bill by the Governor.

"An examination of the bill shows a discrepancy. Precinct 4 of Ward 2 in the City of Prairie Village is included in both the eleventh and thirteenth representative districts.

"A review of the records of the Legislative Research Department shows an obvious intention on the part of the Legislature that Precinct 4 of Ward 2 of the City of Prairie Village be included in representative district thirteen and that the specific reference was dominant over the general reference by the entire ward description. This intent is supported by the map, the nature of the boundaries and location of the precinct; and more specifically by the breakdown on the population figures of the entire ward as divided between the two representative districts, and the final figures on the districts in the county.

"Based upon the information in the Legislative Research Department, it is clear that the Legislature intended Precinct 4 of Ward 2 in Prairie Village to be included in the thirteenth representative district. It is with this interpretation of House Bill No. 2 that approval of the bill is given and this message attached."

Can this court construe House Bill No. 2 to determine in which representative district the legislature intended to place precinct 4 of ward 2? In approaching this question, we point out the basic distinction between the question here presented and that decided in our opinion filed December 5, 1963, in which Senate Bill 440 was held to be unconstitutional. There, the legislature passed one bill and another bill was presented to and signed by the governor, and it was held that this court could not reach out and draw from the legislative records the omitted portion and place it into the law. There, we were dealing with an act which was unconstitutional and therefore not susceptible to construction. Here, we are dealing with a constitutional act—all steps leading up to its enactment were in conformity with the prerequisites of Article 2, Section 14 of our Constitution—which contains an obvious conflict by purporting to place a certain electoral district in two representative districts.

Neither the concept of equal protection as embodied in Section 2

of the Bill of Rights of the Constitution of Kansas nor the equal representation contemplated in Article 10 can be satisfied in one group of people is permitted to have a voice in selecting two representatives while every other person in the state is allowed a voice in selecting only one representative. An elector is not entitled to vote for more than one representative and an act which purports to give him such a right would offend fundamental concepts inherent in our republican form of government and would deny the equal protection and benefit to the people which our Constitution was adopted to insure. To permit the electors in precinct 4 of ward 2 to vote for two representatives would make the act as written violate Section 2 of the Bill of Rights, and we import no such abortive intention to the legislature.

The apparent conflict appearing on the face of House Bill No. 2 may be resolved by this court through the exercise of its power of statutory construction. It is the court's duty to uphold legislation rather than defeat it. It is presumed that the legislature intended to pass a valid law. If there is any reasonable way to construe legislation as constitutionally valid it should be so construed. (*Parker v. Continental Casualty Co.*, 191 Kan. 674, 383 P. 2d 937, and cases cited.)

In construing a statute the legislative intention is to be determined from a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. (*State, ex rel., v. Moore*, 154 Kan. 193, 197, 117 P. 2d 598; *In re Estate of Diebolt,* 187 Kan. 2, 353 P. 2d 803.)

The situation involving the apparent double inclusion of precinct 4 of ward 2 is analogous to the situation in *Felten Truck Line v. State Board of Tax Appeals,* 183 Kan. 287, 327 P. 2d 836. That case involved the construction of two paragraphs of G. S. 1955 Supp., 79-6a04. The first paragraph provided that the property tax assessed on a motor carrier should be paid at the same time required for the payment of general taxes. The second paragraph provided a penalty if the *entire* tax had not been paid prior to the 20th of December in the year in which it was levied, a different provision than for any other group of taxpayers. In construing the second paragraph to the effect that only one-half of the tax need be paid prior to December 20, it was said:

"If possible, the court will construe a statute to prevent discrimination and unequal protection of the laws. This court will always approach questions challenging the constitutionality of a statute with a disposition to determine them in such a manner as to sustain the validity of the enactment in question. (*Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 152 P. 2d 53.) The construction supporting a statute is preferred to one destroying it. (*Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P. 2d 936.) Where possible, the provisions of an act must be considered together to resolve consistency rather than inconsistency, and a construction upholding the provision of the statute is favored. (*Terrill v. Hoyt,* 149 Kan. 51, 87 P. 2d 238.) . . ." (l. c. 294.)

In *Hunziker v. School District,* 153 Kan. 102, 109 P. 2d 115, the rule is stated:

"It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history. . . ." (l. c. 107.)

The language with respect to precinct 4 of ward 2 relating to district 13 must be given effect. That language is in fact an exception to the language "all of wards 1 and 2" in that portion of the act relating to district 11. While there is no specific language establishing district 11, which, when read alone, would indicate that precinct 4 is not included in the terms "all of ward 2," the exception becomes apparent when the language of the bill relating to districts 11 and 13 are read together. Generally speaking, words expressive of a particular intent, incompatible with other words expressive of a general intent, will be construed to make an exception, so that all parts of the act may have effect. The context may thus serve to ingraft an exception by implication, to dispose of an apparent conflict. The applicable rule is stated in *Iola B. & L. Ass'n v. Allen County Comm'rs,* 152 Kan. 365, 103 P. 2d 788, as follows: ". . . When the clauses and paragraphs read seriatim involve repugnancies, but, read as mutually modifying one another, permit a construction as a consistent whole, the latter construction must be adopted. . . ." (l. c. 370, 371.)

As previously indicated, that part of the act establishing district 11 deals generally with "all of ward 2," while that part of the act establishing district 13 deals specifically with precinct 4 of ward 2. General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific reference

or specific language takes precedence over language which more generally deals with the particular subject in the same or other statute which otherwise might be controlling. In *State, ex rel. v. Throckmorton*, 169 Kan. 481, 219 P. 2d 413, it was held:

"In construing statutes and reconciling conflicts, courts must ascertain the intention of the legislature from the subject matter of the statutes, and may take into consideration consequences of their enactment in case of conflict.

"Where one section of a statute treats specially and solely of a matter, that section will prevail over other sections which deal only incidentally with the same question." (Syl. ¶¶ 1, 2.)

The rule is stated in 82 C. J. S., Statutes, § 347b, p. 720, that unless a legislative intention to the contrary clearly appears, special or particular provisions control over general provisions, terms or expressions.

Applying the foregoing rule of statutory construction, the particular reference to "precinct 4 of ward 2" would take precedence over the language referring to "all of ward 2" which, standing alone, would include precinct 4 along with precincts 1, 2 and 3 of that ward. Thus, application of the foregoing rule would place precinct 4 of ward 2 in the 13th district while the other three precincts of that ward are placed in the 11th district.

The intention of the legislature to place precinct 4 of ward 2 in district 13 is supported by an examination of the population statistics used by the legislature in defining proposed districts of Johnson County prior to the drafting of House Bill No. 2.

In 1933 the legislature created the legislative council to deal with questions of state-wide interest and to prepare a legislative program in the form of bills for the consideration of the legislature. To assist it in carrying out its duties, the council established its own research department. (G. S. 1949, 46-308.) The research department of the council is an arm of the legislature itself. In assisting in the legislative work, the research department is akin to the function of a legislative or a code revision commission, reports of which may be considered in construing a statute. (*State, ex rel., v. Davis, Governor*, 116 Kan. 663, 229 Pac. 757; 82 C. J. S., Statutes, § 356, p. 757.)

In the preparation of House Bill No. 2, the research department drew a number of proposed legislative districts within the multi-district counties at the direction of the house committee on legislative apportionment. The general scheme was to keep each district within the county as near an average as practicable and to

keep the population of all districts in a given county within approximately 10 percent above or below the average district population for that county. With respect to Johnson County, the research department and the house committee had before them the population statistics of each ward and precinct of the incorporated cities of that county. Working from the population data sheet and at the direction of the house committee, the research department prepared a pencil work sheet which indicated the assignment by area and population of the five representative districts to be apportioned to that county in accordance with the method of equal proportions. That work sheet was presented to the house committee, and it reflected that the total population assigned to district 11 was 33,192 and the total population assigned to district 13 was 32,109. The work sheet as well as the population statistics for each ward and precinct indicated that ward 2 in the city of Prairie Village had four precincts and that the population of precincts 1, 2 and 3 was 3,708, and that the population of precinct 4 was 1,255.

After it concluded that the five representative districts in Johnson County be established by House Bill No. 2 to include the areas, wards and precincts as designated on the work sheet, the house committee directed that the work sheet be transposed into a typewritten form. The typewritten form was delivered to the house committee and subsequently was used by the bill drafting department to draft House Bill No. 2 as introduced. However, in the transposition from the pencil copy to the typewritten form, precincts 1, 2 and 3 were inadvertently deleted from ward 2 and in drafting the bill all of ward 2 was included in district 11. The typewritten form presented to the bill drafting department made no reference to any particular precincts of ward 2 in district 11 but did contain the population figure of 3,708 persons—the combined population of precincts 1, 2 and 3 of that ward, and which, when added to the population of the other areas placed in district 11, made a total district population of 33,192.

In district 13 the typewritten form made reference to precinct 4 of ward 2 with a population of 1,255 persons, the same number as appeared on the pencil copy. When the population of precinct 4 of ward 2 is added to the population of other areas placed in district 13, it makes a total district population of 32,109 as established by the method of equal proportions. To arrive at a total district population for district 11 of 33,092 it was necessary that the 3,708 population of precincts 1, 2 and 3 of ward 2 be included, and to arrive at the total

district population for district 13 of 32,109, it was necessary that the 1,255 population of precinct 4 of ward 2 be included.

When the geography of districts 11 and 13 is considered, it is apparent that to more fully effectuate the purpose of the legislature in drawing compact districts of near equal population, precinct 4 of ward 2 is more suited to being placed in the 13th and not in the 11th district. The districts of Johnson County are outlined on a county precinct map which was attached to the joint motion and the map shows that the inclusion of precinct 4 of ward 2 in the 11th district would be lacking in compliance with the standard of compactness which this court recommended in its opinion filed December 5, 1963. As indicated on the map, precinct 4 of ward 2 is triangular in shape and only touches a corner of district 11 at one point. On the other hand, with the precinct as a portion of district 13, that district would be generally rectangular in shape and both districts would be compact.

As previously indicated, with precinct 4 of ward 2 placed in district 13, districts 11 and 13 would have a population of 33,192 and 32,109 respectively. Those total district population figures produce a result closer to the mean population of 32,836 for the districts in Johnson County than if precinct 4 of ward 2 were placed in district 11, in which case district 11 would contain 34,447 and district 13 would contain 30,845. We think this is further indication that the legislature intended to include precinct 4 of ward 2 in district 13. In *Harris v. Shanahan,* supra, we said: ". . . there should be as close an approximation to exactness as possible and this is the utmost limit for the exercise of legislative discretion. . . ." (l. c. 205.) When the act is construed as placing precinct 4 of ward 2 in district 13, both districts would be as close an approximation to exactness as possible as required by the mandate of our Constitution pertaining to apportionment.

As was stated in *Harris v. Shanahan,* supra, the governor is an essential part of the co-ordinate function in enacting laws, and is one of the three lawmaking powers of the state. When the governor signed House Bill No. 2 he noticed the obvious conflict therein but concluded to sign the bill making it a law. In doing so, he appended his interpretation of the act based upon the records of the research department and other data made available to him, and concluded it was clear the legislature intended that precinct 4 of ward 2 be included in district 13. In Sutherland Statutory Construction, Vol.

2, 3d Ed., Sec. 5004, p. 488, the rule is stated: "The governor's action in approving or vetoing a bill constitutes a part of the legislative process, and therefore the action of the governor upon a bill may be considered in determining legislative intent."

In view of the foregoing, the apparent conflict of provisions appearing on the face of House Bill No. 2 are required to be resolved by this court through the use of its power of statutory construction. Applicable principles of statutory construction together with the governor's interpretation when he approved the bill, the report of the research department of the legislative council, the population statistics of the various wards and precincts of Johnson County, and the nature of the boundaries and location of the wards and precincts therein, require that we hold precinct 4 of ward 2 of the city of Prairie Village is solely a part of representative district 13.

As previously indicated, the purpose and intent of both Senate Bill No. 2 and House Bill No. 2 was to apportion the Senate and the House of Representatives in accordance with the mandate of Article 2, Section 2, and Article 10, Sections 1 and 2 of the Constitution of Kansas, and we hold that both acts are constitutional and valid. Hence, it follows that judicial action has ceased and the judgment of the court below pertaining to equitable relief as well as the manner of holding future elections as therein directed has died of its own terms.

PRICE, J., dissenting in part: As abstract principles of law— I agree with the rules of statutory construction set forth in the court's decision. I thoroughly disagree, however, that reliance on those rules may be had in order to correct the very patent legislative error contained in the act under consideration. In plain and unambiguous language the legislature placed precinct 4 of ward 2 in the city of Prairie Village in two separate representative districts. As stated by this court in many decisions, the universal rule is that where a statute is plain and unambiguous there is left no room for "judical construction" so as to change the language employed therein. There should be a limit on just how far a court may go in "black-smithing" a legislative act—considerations of expediency notwithstanding. In my opinion that limit has been extended far beyond all reason and well-established principles heretofore followed. I concede that undoubtedly the legislature intended to place precinct 4 of ward 2 in only one representative district, but, as I view

this matter, the court is confronted not with what the legislature may have *intended* to do—but rather with what in fact *was done,* and the defect is one which the legislature alone can correct.

I therefore dissent from that portion of the court's decision dealing with this specific matter.